Hon. PIERRE ADOLPHE ROST, } *Associate Justices.*
Hon. GEORGE ROGERS KING,

## JACOBS *v.* CALDERWOOD.

The delegation by which a debtor gives to his creditor another debtor, who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared his intention to discharge the debtor by whom the delegation was made. The acceptance by the creditor of such a *stipulation pour autrui* will not authorize the inference that he intended to discharge the original debtor. C. C. 2188.

Where the notes secured by a mortgage have all matured before the sale under an order of seizure and sale, and are of like nature and dignity, they must be paid proportionally out of the fund.

Prescription as to the original debtor is not interrupted by an hypothecary proceeding against the mortgaged property in the hands of a third person; nor will it be interrupted by a partial payment made through the judicial sale produced by such hypothecary proceedings.

A debtor who makes a payment is considered as interrupting the prescription running in his favor, because there is an implied acknowledgement of the creditor's right. But no such acknowledgment can be inferred from a payment made, not by the debtor, but without his knowledge or participation, and through a judicial proceeding to which he was not a party.

APPEAL from the District Court of Ouachita, *Barry, J. Purvis* and *Copley,* for the appellant. *McGuire* and *Ray,* for the defendant. The judgment of the court was pronounced by

SLIDELL, J. The defendant executed two notes in favor of *Jacobs,* each for $750. The first fell due in March, 1842, and the second in March, 1843. They were given for the price of a house and lot, sold by the plaintiff to the defendant.

---

* SLIDELL, J. was not present during this term.

JACOBS
*v.*
CALDERWOOD.

In 1841, the defendant sold the property to *Hanna*, who assumed, as the consideration of the sale, to pay the notes, agreeing to put himself in the place, stead, and responsibility of *Calderwood* to *Jacobs*.

In April, 1842, *Jacobs* instituted an hypothecary action against *Hanna*, and obtained a decree of seizure and sale. The proceeds of sale were insufficient to pay the mortgage debts. *Jacobs* afterwards brought a personal action against *Hanna* upon his assumption, and before the trial of the present suit obtained judgment against him personally, for the residue. The object of the present suit is to recover from *Calderwood*, the unpaid balance of the notes.

It is certain that *Calderwood* was once the debtor of the plaintiff; and he must have continued to be so unless the plaintiff has consented to his discharge. It is not pretended that an express consent has been given; but the defendant argues that his release results, by legal implication, from the facts already stated. In this view we do not concur.

The original debt was not novated. Novation is a contract consisting of two stipulations: one to extinquish an existing obligation, the other to substitute a new one in its place. Code 2181. The preëxistent obligation must be extinguished; otherwise there is no novation. Ib. 2183. Novation is not presumed; the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt. Ib. 2186. The delegation by which a debtor gives to the creditor another debtor, who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation. Ib. 2188.

Applying these principles to the case before us, it is impossible to deduce the discharge of *Calderwood* from the acceptance by the plaintiff of the *stipulation pour autrui*, made in the contract of sale between *Calderwood* and *Hanna*. *Hanna's* liability was superinduced upon that of *Calderwood*, which still subsisted, and which the creditor did not intend to relinquish.

Pothier, in commenting upon the rule that, a novation is not to be presumed, unless the intention of the creditor to affect it clearly appears, puts the following case: "C'est pourquoi si, dans la même espèce, ayant fait une saisie et arrêt sur *Jacques*, pour le fait de *Pierre* mon débiteur, *Jacques* s'est obligé envers moi purement et simplement, par un acte, à me payer la somme de mille livres qui m'est due par *Pierre*, et pour laquelle j'ai fait arrêt, sans qu'il ait été ajouté, comme dans l'espèce ci-dessus, que j'ai bien voulu, pour faire plaisir à *Pierre*, me contenter de l'obligation de *Jacques*, ou quelque autre chose semblable, qui fera connaitre évidemment que j'ai voulu décharger *Pierre*, je ne serai point censé avoir fait de novation, et *Jacques* sera censé avoir accedé à l'obligation de *Pierre*, qui demeure toujours mon obligé. The case of *Walton* v. *Beauregard*, 1 Rob. 301, is clearly distinguishable from the present. There the creditor, without the consent of the original debtor, made stipulations for delay, and entered into arrangements with him which were considered by the court as making the contract more onerous.

The gross proceeds of the judicial sale of the mortgaged property effected in the hypothecary action brought by *Jacobs* against *Caderwood*, were $666 66. The question is presented, whether that money is to be imputed to the first note, or proportionally to both.

The decree of seizure and sale directed that the property should be sold for so much cash as would pay the first note, and the residue of the price on a credit so as to meet the falling due of the second note. As *Jacobs* was the holder of

both notes, if the property had been sold before the maturity of the second note, the law, as against *Calderwood*, who was not a party to the suit, would perhaps have imputed the proceeds of the sheriff's sale to the first note exclusively. C. C. 2162. But when the sale was made and the money received, both notes had matured, and, being of like nature and dignity, were to be paid proportionally out of the fund. The sheriff's return credits the amount upon the execution, which followed the terms of the decree. Whether this be construed, or not, as an implied imputation of the proceeds to the first note, is immaterial. *Calderwood* did not assent to, and was not bound by, any other than the legal imputation.

A portion of the first note having been thus paid, the question remains, whether the residue is barred by prescription. The note fell due in March, 1842. The present suit was brought in January, 1848. In the intermediate period, no proceedings whatever were had against *Calderwood*, nor is there any evidence of any acknowledgement by him.

We consider it clear that, the hypothecary proceeding against the mortgaged property in the hands of *Hanna*, did not interrupt the prescription as to the personal liability of *Calderwood*. See Troplong, Presc'n. §658, 659, and note. It is equally clear that, the partial payment, made through the judicial sale already mentioned, was not an interruption as to *Calderwood*. A debtor who makes a payment is considered as interrupting the prescription which is running in his favor, because it is an implied acknowledgment of the creditor's right. But such an acknowledgment cannot be predicated in case of a payment made, not by the debtor, but without his knowledge or participation, and through a judicial proceeding to which he was not a party.

The plaintiff is entitled to recover the unpaid balance of the second note.

It is, therefore, decreed that, the judgment of the court below, so far as concerns the note sued upon, due 1–4 March, 1843, be reversed; and it is further decreed that, the plaintiff, *Samuel Jacobs*, for the use of *George W. Copley*, recover of the defendant, *John Calderwood*, the sum of $562 73, with interest thereon at the rate of ten per cent per annum from the 6th day of January, 1844, until paid, and costs in both courts.