(77 South. 768)

No. 22627.

BADIE v. COLUMBIA BREWING CO.

(Jan. 3, 1918. On Application for Rehearing, Feb. 7, 1918.)

*(Syllabus by the Court.)*

1. LANDLORD AND TENANT ⬤➡167(8)—INJURY TO VISITOR—FAILURE TO REPAIR—LIABILITY.

The owner of a leased building is responsible in damages for personal injuries' suffered by a visitor or guest of the tenant as a result of the owner's failure to make repairs necessary to maintain the building in a safe condi-

tion, even though the tenant was warned of the unsafe condition of the premises, and could not have recovered damages if the accident had happened to him or her.

*(Additional Syllabus by Editorial Staff.)*

2. DEATH ⬤➡29—RIGHT OF WIDOW AND POST-HUMOUS CHILD—STATUTE.

Under Civ. Code, art. 2315, providing that a right of action for damages shall survive in case of death in favor of the widow and children of deceased, for one year from his death, and that if deceased leaves a widow and minor children the right of action shall accrue to all, a cause of action for personal injury, on the death of the plaintiff pending the action, from a cause other than the injury, survived to the plaintiff's widow, though she was not plaintiff's wife at the time of the accident, in behalf of herself and a posthumous child, although conceived before the marriage and presumed not to be the child of the plaintiff, without any judicial proceeding to have themselves recognized as entitled to prosecute the action.

On Application for Rehearing.

3. DEATH ⬤➡29—SURVIVAL OF ACTION—JUDGMENT—PROTECTION OF PARTIES.

In such action, where the widow had not qualified as tutrix, the district judge would protect the interest of the child and acquit defendant of further liability before permitting the widow to collect or execute the judgment in favor of her child, and, to enforce that protection, defendant might deposit the sum due to the child in the registry of the court, and rule the parties into court.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Frederick Badie, with supplementary action after his death by his widow, Ethel Etta Badie, against the Columbia Brewing Company. Demand rejected, and the widow, in her own behalf and in behalf of her infant child, appeals. Judgment annulled, and adjudged that plaintiff recover from defendant $1,600 for herself and $400 for her infant child.

Dart, Kernan & Dart, of New Orleans, for appellant. Carroll & Carroll and Henry G. McCall, all of New Orleans, for appellee.

O'NIELL, J. This is an action for $25,000 damages for personal injuries suffered by the plaintiff by falling from a balcony of a house belonging to the defendant. The railing was

in need of repairs, and broke when the plaintiff leaned against it. The suit is therefore founded upon the provisions of the Civil Code that the owner of a building must keep it in a condition of safety to others and is responsible in damages for any injury that results from his failure to make necessary repairs. R. C. C. 670 and 2322.

[2] The plaintiff married one Ethel Breaux after filing the suit, and nearly two months later died with typhoid fever. The widow, after giving birth to a posthumous child, filed a supplemental petition in the suit, claiming, in the proportion of $20,000 for herself and $5,000 for the child, the damages alleged to have been suffered by the injured plaintiff. The defendant filed exceptions to the demand of the widow, contending that she had no right of action, either for herself or for the child, especially without having been judicially recognized as the widow of the injured plaintiff and confirmed as natural tutrix of the child. The exceptions were referred to the merits, after trial of which the plaintiff's demand was rejected. The widow, in her own behalf and for the child, prosecutes this appeal.

The district judge did not rule separately upon the exceptions of prematurity and of no cause or right of action, after referring them to the merits. But from his written reasons for the judgment rendered, i. e., that he considered the law and the evidence to be in favor of the defendant, we assume that the judge found no merit in the exceptions; and we concur in that view. Article 2315 of the Civil Code, as amended by Act No. 120 of 1908, provides that the right of action for damages in case of the death of the injured person shall survive one year after his death in favor of his widow and minor child or children, if there be a widow and minor child or children, and, if not, then in favor of other surviving relations mentioned in the statute. The survival of the right of action of the injured person, in case of his death, does not depend upon whether the death was the result of the injury. That was decided in the case of Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475, where, as in this case, the injured plaintiff died from a cause other than the injury complained of in the suit he had filed.

As the widow in this case is not claiming, either for herself or for her child, that any loss or injury was suffered by either of them directly by the alleged fault or negligence of the defendant, but is claiming, for herself and the child, only such damages as her husband suffered, the right of action is based entirely upon the statute providing for the survival of the right of action of the injured person, and is not affected by the fact that the present plaintiff was not married to the person injured at the time of the injury. The jurisprudence on that subject, holding to a strict construction of the statute, was reviewed in the case of Flash v. Louisiana Western Railroad Co., 137 La. 352, 68 South. 636, L. R. A. 1916E, 112.

It should not concern the defendant that the child, in whose behalf jointly with the mother this suit is prosecuted, was born so soon after the marriage of the mother that, according to article 186 of the Civil Code, and the laws of nature, the child must have been conceived before the marriage, and is not presumed to be the child of the mother's husband. Because, conceding that the child is not presumed to be the child of the deceased, Frederick Badie, it follows that the right of action of Badie survived in favor of his widow alone, according to the exact terms of the Act No. 120 of 1908, amending and reenacting article 2315 of the Civil Code. The demand being only for the damages suffered by the injured person, the amount of it, if allowed, would be the same if claimed by the widow for herself alone. Therefore, without having pleaded the exception of misjoinder of

parties plaintiff, the defendant has no cause to complain of the widow's conceding a part of her demand to be for the use and benefit of her child. In the case of Eichorn v. New Orleans & C. R. Light & Power Co., 112 La. 249, 36 South. 347, 104 Am. St. Rep. 437, on application for rehearing, it was held that the widow could cumulate, with her demand, a demand on behalf of her minor children, for damages suffered by her deceased husband, father of her children; that the right of action of the injured person survived in favor of the widow and minor children jointly; and that, if the widow sued only in her own right, a judgment in her favor for the damages suffered by the deceased husband would leave the children no right of action except for the loss suffered directly by them by the death of their father. Our conclusion is that the defendant's exceptions to the supplemental petition should have been overruled.

[1] There is nothing in the facts of the case to distinguish it from the recent case of Wise v. Lavigne, 138 La. 218, 70 South. 103, or from any of the several other cases in which the owner of a rented building was held responsible in damages for personal injuries suffered by a guest of the tenant from the failure of the owner to make needed repairs.

The building was leased to one Charles Harold, who had sublet a front room upstairs, opening upon the balcony, to his sister-in-law, Leola Greenup. The defendant had not been notified that the balcony or railing was in an unsafe condition or in need of repairs. In the forenoon of the day of the accident an agent of the defendant called at the house to inquire about ratproofing the premises and making repairs to a fireplace and the plastering. Going out from the room occupied by Leola Greenup upon the gallery, he observed "that the railing looked weak," as he expressed its condition in his testimony. He called the woman's attention to the condition of the railing, and cautioned her to avoid leaning against it and not allow any one to go upon the gallery until he could have the railing repaired, which he said he would do immediately. He went at once to find the carpenter employed to repair the buildings under his charge, but was unable to find him that day. A few hours after the defendant's agent left the house—possibly less than an hour after—Frederick Badie called as a guest of Leola Greenup. He came on a bicycle, and left the vehicle on the sidewalk in front of the house. While Badie was in the room with Leola Greenup, a neighbor, intending to play a practical joke, hid the bicycle in an alley near the house. Badie, hearing the moving of the bicycle, went out upon the gallery and leaned over the railing to look for the vehicle. The railing broke, and he fell upon the brick pavement, 12 or 14 feet below, and was seriously hurt.

Leola Greenup testified that she did not warn Badie of the unsafe condition of the railing; that just as she was opening her mouth to tell him not to lean on the banister it broke. There is no evidence whatever that Badie was warned not to lean against the banister. A witness named Rose Johnson, testifying for the defendant, in a rambling statement, not responsive to the question propounded, said that soon after the accident, when the ambulance had arrived, she asked Leola Greenup why she had not helped to pick up Badie, "and she said that was his fault; that when he first came in he was sitting on the banisters, and she told him to get down, and he got down and sat inside the door." The statement of the witness, contradicting the testimony of Leola Greenup, is not worthy of belief, because, if Badie had sat upon the railing without breaking it, it would not have broken afterwards when he merely leaned over it. Besides, the statement of Rose Johnson was inconsistent with the allegation in the defendant's answer to

this suit that the railing was so weak and unsafe "that the slightest and most casual observation and examination showed said gallery to be unsafe," and that it was negligence on the part of Badie not to observe it. But the statement of what Leola Greenup told Rose Johnson was not admissible in evidence except to impeach the testimony of Leola Greenup; and, if given that effect, there would yet be no evidence that Badie was warned of the unsafe condition of the railing. The attorney for the plaintiff objected to Rose Johnson's relating what she said Leola Greenup told her after the accident, and the judge instructed the witness to tell only what she knew about the accident. As Leola Greenup had already testified in the case, and had not been asked or testified about any conversation with Rose Johnson, the latter's statement of what Leola Greenup said after the accident was not admissible even for the purpose of impeaching or contradicting Leola Greenup.

The allegation in the defendant's answer that the unsafe condition of the railing was so apparent that it would have been negligence on the part of any one to lean against it was not supported by proof. The only testimony relating to the appearance of the railing before the accident was that of the defendant's agent and that of Leola Greenup. The agent said, in answer to the question whether the railing was in a very bad condition, "Well, it was shaky." The other witness said, in answer to the same question, "Well, the banister was weak, not plumb loose, but weak, it didn't appear in such a bad condition, though it was weak."

That evidence cannot support the plea of contributory negligence on the part of Badie in merely leaning against the railing to look over the side or end of the balcony. Balcony railings are presumed to be safe to lean against unless they appear plainly to be unsafe.

It is contended by the learned counsel for the defendant that the fault or negligence that directly caused the accident was the failure of Leola Greenup to keep her guest off of the gallery or away from the railing. Admitting that she was at fault in failing to warn her guest not to lean against the railing, that did not absolve the owner of the building from responsibility for the unsafe condition of the railing. A visitor or guest of the lessee or tenant of a building is not bound or affected by any obligation of the tenant to the landlord with regard to maintaining the premises in a safe condition. The owner of a building cannot, by any contract or agreement with the lessee, tenant, or subtenant, absolve himself of responsibility to others for injuries resulting from a failure to maintain the leased premises in a safe condition. See Schoppel v. Daly, 112 La. 201, 36 South. 322; Cristadoro v. Von Behren's Heirs, 119 La. 1025, 44 South. 852, 17 L. R. A. (N. S.) 1161; Wise v. Lavigne, 138 La. 218, 70 South. 103.

It is contended finally that the defendant is not responsible for the injury because there was not sufficient time for repairing the railing after the defendant's agent learned that it was unsafe and before the accident happened. But it is well settled that ignorance of the unsafe condition of a structure, on the part of its owner, does not relieve him of the duty imposed by the Civil Code to maintain his property in a condition of safety to others. See Tucker v. I. C. Railroad Co., 42 La. Ann. 114, 7 South. 124; Barnes v. Bierne, 38 La. Ann. 280; Allain v. Frigola, 140 La. 982, 74 South. 404; Serio v. American Brewing Co., 141 La. 290, 74 South. 998, L. R. A. 1917E, 516; Atkins v. Bush, 141 La. 180, 74 South. 897, L. R. A. 1917E, 809. Surely the defendant is not less responsible for having learned of the unsafe condition of the railing too late to have repaired it before the accident happened than

if the defendant had not known the condition at all before the accident happened.

Our conclusion being that the plaintiff is entitled to damages for the injuries suffered by her deceased husband, the only question remaining is the amount to be allowed. Badie suffered fractures of both wrists, one of which remained deformed, and the hand was never again of much use. He was severely bruised about the face and body, and rendered unconscious. He underwent an operation at the charity hospital, under the influence of ether anæsthesia, sixteen days after the accident. He remained in the hospital about four months. He only lived a year and four days after the accident, which, however, did not shorten his life. We have concluded to allow $2,000 for the pain and inconvenience he suffered and for his loss of earning capacity.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the plaintiff recover of and from the defendant $2,000, that is, $1,600 for herself and $400 for the use and benefit of her child, with legal interest from the date of this judgment, and all costs of this suit.

### On Application for Rehearing.

PER CURIAM. [3] It is contended by the learned counsel for defendant that the plaintiff, without having qualified as tutrix, is not authorized to collect the amount of the judgment rendered in favor of her child.

The district judge will take such precautions as are deemed necessary or proper to protect the interest of the child and to acquit the defendant of further liability before permitting the plaintiff to collect or execute the judgment in favor of her child. And to enforce that protection the defendant may deposit the sum due to the child in the registry of the court, rule the parties into court, and be acquitted of further liability. The rehearing is denied.