DAWKINS, J.
Plaintiff’s action is one for damages ex contractu, arising from his alleged eviction as lessee from the second and third, floors of a building situated at No. 841 Canal street, in the city of New Orleans. He alleges that defendant is the testamentary executrix and universal legatee of Fred Bertrand, deceased, from whom he leased said premises for a period of CO months, beginning October 1, 1010; that after the expiration of 31 months said building was condemned and wholly destroyed at the instance of the police authorities of the city of New Orleans; that he was thereby deprived of the use and occupancy of said premises for the remainder of said term, and has, on that account, been damaged in the sum of $T,450. The petition is quite lengthy, and sets forth in detail the facts and circumstances which it is claimed entitle plaintiff to recover.
Defendant admits the execution of the lease by her testator, as well as the subsequent condemnation and destruction of the premises, but denies that she, as the universal legatee of Bertrand, is liable to plaintiff therefor, for the reason that Bertrand, to the knowledge of the plaintiff, was not the owner of said building, but himself merely a lessee; ■that Bertrand subleased the two upper floors of the property to plaintiff, and that subsequently the whole of the lease which Bertrand held from the owners was sold and conveyed to one Herman Fichtenberg, and- that plaintiff thereafter paid the rent to- said Fichtenberg, thereby recognizing said transfer and accepting the transferee as his lessor, and releasing respondent from any further liability in the matter. It is further alleged that, by a special clause in the lease, the plaintiff accepted the building in its then condition, and waived any right to recover on account of any defects.
There was judgment for the defendant below, and plaintiff has appealed.
The essential facts of this case are not disputed, except as to the amount of damage, and the issues presented are largely of law.
Plaintiff, who is a dentist by profession, leased the second and third floors of the building above described from Bertrand, beginning October 1, 1910, for a period of 60 months, for the purpose of fitting it up as a dental office, living quarters, etc., and with the intention of subleasing such parts as might not be used by himself. The stipulated rental was $125 per month, with special permission to sublease. At considerable expense, probably more than that claimed in the petition, he fitted up quite an elaborate dental office, and equipped and arranged the other portions of the building in such a way that at the time the building was demolished he was receiving a sufficient amount from his tenants to practically .pay his entire rent. Bertrand was not, to the knowledge of plaintiff, the owner of the premises, but had previously leased the entire building from the owners, and was, at the time of his lease, occupying the first floor himself as a barroom. The two floors leased were vacant, had little or no equipment therein, and the following special clause was inserted in the lease, to wit:
“The lessee hereby agrees in consideration of this lease to accept building in its present condition, and to make all' repairs, alterations, additions, and improvements at his own expense, said additions and improvements to revert to lessor at expiration of this lease, without recourse against lessor by lessee for any' sum or sums so expended. . The lessor, however, agrees to give the lessee the benefit of any repairs or work done, if any, by the liquidators of the Fred S. Haufman, Btd.; or, in the event that the parties concerned may agree upon a cash consideration in lieu of repairs or work, *759 the lessor agrees to give the aforesaid cash consideration, if any, to lessee,,to be used for said repairs, work, or alterations to said premises. The lessee also agrees and binds himself to pay all additional charges for insurance, should insurance rates be increased on account of alterations made by lessor.”
Some months after his lease to plaintiff, Bertrand entered into an arrangement with the Capdau-May Drug Company, a corporation in which he held stock, whereby it should occupy the ground floor formerly used by him, at a price somewhat less than that which he was paying for the entire building, but specially providing that he should remain liable to the owners for the entire rent. The Drug Company continued business for about a year and a half and went into the hands of a receiver. Bertrand died, and by his will constituted defendant the universal legatee of his estate, which she has accepted. Subsequently the receiver, under order of court, and for a consideration of $7,000, conveyed to Herman Fichtenberg all of the rights of occupancy belonging to the Drug Company. Defendant appeared and made herself party thereto, and for a consideration of $2,700 transferred all of the remaining rights of Bertrand under the original lease of the entire building, including his rights, as lessor, of Dr. Knapp, and at the same time delivered to the purchaser the unmatured rent notes of plaintiff. Counsel for the estate of Bertrand notified plaintiff that he should thereafter pay the rent either to Fichtenberg or the Whitney Central National Bank, at which bank the notes were deposited. Plaintiff paid to Fichtenberg or his representative the rent for three consecutive months — that is, he sent it downstairs by a servant, as he had done before — and on March 26, 1913, he was notified by the city engineer to vacate the premises for the reason that they had been condemned and ordered demolished. The dangerous condition of the building was unknown to both Bertrand and plaintiff at the time the lease was made. However, Bertrand had been occupying it as a tenant for about 35 years, and plaintiff had known the building for a long number of years, and was thoroughly familiar with its ownership and the nature of his lessor’s possession. In fact, the plaintiff, as a witness, seems very frank in all these matters.
Opinion.
The first question t<y be answered is, Did the transfer to Fichtenberg of the rights of Bertrand and his legatee, together with the conduct of plaintiff, after being notified thereof, release defendant from any further liability to plaintiff as lessor?
[1, 2] In order to answer this question in the affirmative, as did the district court, we must find that there was a complete novation, to the extent that Fichtenberg was placed as completely in the shoes of defendant as if he had made the original lease. The relation of lessor and lessee is created very much in the same manner as that of vendee and vendor in the contract of sale, in that there must be a thing, a price, and the consent of the parties, and carries with it implied obligations of warranty, etc. R. O. O. 2676 et seq. It is a commutative contract, and, once established, well-defined rights and obligations attach to each party thereto. R. C. 2692 et seq. The relation is terminated in the same way as other agreements. R. O. 2727 et seq. i-
[3,4] Therefore, since the defense under discussion is, in effect; a plea of novation, or the substitution of a new debtor, in so far as the obligations of the lessor are concerned, we must look to the articles of the Code dealing with novation for a determination of that issue. Article 2185 reads:
“Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place.”
*761 Article 2188:
“All kinds of * * * obligations are subject to novation.”
Article 2189:
“Novation takes place in three ways:
“1. * * * When a debtor contracts a new debt, * * * which new debt is substituted to the old one, which is extinguished.
“2. * * * When a new debtor is substituted to the old one, who is discharged by the creditor.
“3. * * * When by the effect of a new engagement, a new creditor is substituted to the old one, with regard to whom the debtor is discharged.”
These articles of the Code are found in the chapter which deals with the manner in which obligations may be extinguished. Of course, with regard to the obligation to pay the rent, etc., plaintiff was the debtor to his lessor; and, as to the obligation of maintaining plaintiff in the undisturbed possession of the premises during the term of the lease, Bertrand was the obligor or debtor of plaintiff.
Again, article 2192 reads:
“The delegation, by which the debtor gives to the creditor another debtor who obliges himself toward such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation.”
Article 2190:
“Novation can be made only by persons capable of contracting; it is not presumed; the intention to make it must clearly result from the terms of <he agreement, or by a full discharge of the original debt.”
Article 2194:
“The mere indication made by a debtor of a person who is to pay in his place does not operate a novation.
“The same is to be observed in the mere indietion made by the creditor of a person who is to receive for him.”
We do not have to look to the common law for our guidance in the determination of the subject-matter of this litigation, for it is governed by the provisions of the Civil Code, derived from the civil law. For an able and elaborate discussion of the differences under the two systems, see the case of Viterbo v. Freidlander, 120 U. S. 707, 7 Sup. Ct. 962, 30 L. Ed. 776. By a reasonable interpretation of the articles above quoted, it is evident that, in order for Bertrand and his heirs to have been discharged from his obligations to plaintiff under the lease, the intention of the latter, not only to accept Fichtenberg in his place and stead, but also to discharge the former lessor, must have been clear and unequivocal. See, also, Austin, Thorpe & Co. v. Da Rocha, Becker & Co., 23 La. Ann. 48; Choppin v. Gobbold, 13 La. Ann. 238; Jacobs v. Calderwood, 4 La. Ann. 509; Mark v. Bowers, 4 Mart. (N. S.) 95; Levy v. Pointe Coupee, 24 La. Ann. 293.
[5] All that plaintiff did was to pay his rent for three months to Fichtenberg, after being notified of the transfer — that is, he sent the rent down, probably in the shape of a check in favor of Fichtenberg, by a servant, to whomever was in charge of the premises on the ground floor — and on one occasion admitted to an outsider that he had a new landlord. At the date of the transfer plaintiff’s negotiable notes were outstanding, and were by the same act conveyed to Fichtenberg. Defendant had the legal right to sell, and there was nothing that plaintiff could have done to prevent the transfer if he had wanted to. R. C. 2009 et seq. In paying the rent he did nothing more than he was bound to do under the law. There is nothing in the record to show that he either expressly or impliedly agreed to release defendant from the obligations of lessor.
The word “attorn,” referred to in brief and argument, as well as in the decisions cited, is simply a relic of the old feudal days of England. Because of the close personal relations of the lord and his vassal, requiring not only the delivery and undisturbed use of the property, but in addition the physical pro-. *763 tection of the tenant and his family, the landlord could not transfer the property or his rights (in reversion) as lessor without the consent of the tenant. The-method by which this was done was quite formal, and the new lessor succeeded to all of the obligations of the old, including that of personal protection. However, by St. 4 & 5 Anne, c. 16, §§ 9, 10, the necessity for attornment was abolished, and the right to transfer became absolute, so that the term lost practically all of its significance. R. O. L. vol. 16, § 120, and authorities cited, and especially the elaborate note in L. R. A. 19150, p. 192. However, such a discussion is interesting only as a matter of history of the common law; for, as above indicated, we are controlled in the case at bar by the Civil Code and the principles of the civil law.
We conclude, therefore, that the rights of plaintiff, as against defendant, were not affected by the transfer to Fichtenberg.
Extent of Defendant’s Liability.
[S, 7] Plaintiff contends that defendant is liable to him for the damages claimed under the following articles of the Code, to wit:
Article 2695:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
Article 2696:
“If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease.”
It requires no extended process of reasoning to establish that the lessor is liable whether he knows of the defect or not, for the law is plain. Defendant is liable for such damages as entered reasonably into the contemplation of the parties at the time of making the lease (R. C. 1933), unless there be some other provision of law which prohibits such recovery. It cannot be that this is the effect of article 2697, for that article applies to cases where the property leased is destroyed by an “unforeseen event,” which, in the civil law, is equivalent to vis major, or uncontrollable force. See Viterbo v. Freidlander, supra. While the building was destroyed through the police powers of the city, the real cause therefor was its defective condition, due either to faulty construction, decay, or the lack of repairs, for which the lessor, or those under whom he held, were responsible. It makes m> difference that the lessor in this case was not the owner, to the knowledge of the plaintiff. That is merely an equitable consideration, and must give way to tlie positive provisions of law. He assumed that relation, as he had a right to do, under the express provisions of the Code, arts. 2681 and 2682. It would seem that he has his appropriate remedy, either by a call in warranty, or in an action against his lessor, just as the vendee of the fee would have in a transfer of real property.
[8] It is further contended by defendant that the original lessor, Bertrand, was relieved by the special stipulation written into the lease, quoted earlier in this opinion, to the effect that the lessee took the building in the condition which it was, etc. However, that stipulation must be interpreted according to what the parties had in mind at the time, and all doubts must be construed against the lessor. We think it reasonable to say that inasmuch as the lessor did not desire to go to any extra expense in fitting up the premises for the purpose for which plaintiff intended to use them, the latter agreed to take them as they were, and to make his own changes and improvements, and that the parties did not have in mind any defects such *765 as were subsequently discovered and caused the destruction of the building. A similiar provision was so construed in the case of Pierce v. Hedden, 105 La. 294, 29 South. 734. This defense, in our opinion, is without merit.
[9] As indicated elsewhere in this opinion, we think the plaintiff expended considerably more than $3,009 in putting the premises in shape for use by himself and his tenants; but that is all that he has claimed, and he cannot recover more, in view of defendant’s timely objection to testimony. Under the terms of the lease, these improvements were to revert to the lessor, and the only practical way, therefore, in which their value to plaintiff can be arrived at is on the basis of their use for the entire period of five years, as pointed out by plaintiff’s counsel. He was certainly materially damaged by the untimely deprivation of their use, and the court must determine the extent of that injury in the most feasible way possible. In other words, figuring the matter on the basis of 60 months, 31 months of which had expired, plaintiff was entitled to 29/eoths of their value, or the sum of $1,450. As against this should be credited the value of the material which was removed by plaintiff, and which, according to the testimony of the witness Edwin Keiffer, who helped put it in, was about 50 per cent, of the electrical equipment (the whole of which was valued by him at from $1,200 to $1,400), or $600 or $700. Putting it at the lesser amount, $600, and deducting this from the $1,450, leaves $850, for which the plaintiff is entitled to recover on account of being deprived of the use of his fixtures and improvements.
Cost of Moving and Loss of Time from Business.
[10] We do not think plaintiff entitled to recover for the expense of moving, for that is an item which he would have had to incur at the expiration of the lease, and the date of the expenditure was merely accelerated. Pierce v. Hedden, supra.
[11] As to the loss of his professional time in looking for a new location we think he is entitled to recover, as this was an injury occasioned as a direct consequence of the eviction, and must have entered into the contemplation of the parties, in event of eviction in the way that it was done. He did not necessarily have to lose this professional time at the expiration of his lease, for it is probable that such a location, in the ordinary course of things, would have been found by him during off hours, and without expending his professional time. We think plaintiff entitled to recover for the amount claimed, $70, for the loss of time.
Loss on the Subleases.
[12] The article of the Code, 2696, above quoted, provides that the lessee may recover the loss which he has sustained by the interruption of the lease, but must be construed together with the article 1933, governing the breach of contracts in general. We think it must have reasonably entered into the contemplation of the parties that plaintiff would be injured by his inability to sublease the premises, as was specially provided in the contract. But the measure of his damages was the difference to the rental value of the premises at the time of the eviction as against the value at the date of the lease. Nothing could better indicate that difference than the amount which he was receiving for the use .of the premises at the moment of the eviction. To the value of that part of the property he was occupying should be added the sums which he was receiving from his tenants, and from this total should be deducted what.he had to pay his own lessor, and this will give the difference in value of the lease to him. R. C. L. p. 696 et seq., and the authorities there cited.
Since the evidence on the value of the subleases was excluded by the lower court, *767 it is necessary to remand this case for the purpose of administering proof on that point. However, since the other items are definitely disposed of herein, we see no reason why a judgment in favor of plaintiff to that extent should not he entered.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, reversed and annulled, and that the plaintiff do have and recover of the defendant the sum of $920, with legal interest from judicial demand, with costs of this appeal. It is further ordered that this case be remanded for the purpose of administering proof on the value of the leased premises at the time of the eviction, as compared with the value at the date the lease herein was entered into, all in accordance with the views herein expressed, the costs of the lower court to await a final determination of the issues therein.
PROVO STY, J., dissents as to the mode of commuting the damages for value of sublease; otherwise concurs.
SOMMERVILLE, J., dissents.