44 So.2d 862

**SALTER v. ZODER.**
**In re SALTER.**

No. 39261.

Feb. 13, 1950.

Thomas M. Comegys, Jr., Shreveport, for plaintiff-applicant.

Morgan, Baker & Skeels, Shreveport, for defendant-appellee.

FOURNET, Chief Justice.

This suit is before us on certiorari to review the judgment of the Court of Appeal, Second Circuit, which affirmed the judgment of the lower court dismissing plaintiff's suit for the use and benefit of his six-year-old minor daughter, who was injured while playing in the paved driveway leading to the garage apartment oc-

cupied by the plaintiff and his family under a sub-lease, caused by the alleged negligent act of the defendant, owner of the premises, in having placed on a portion of this driveway a stack of lumber and having same covered with galvanized iron extending beyond the edges on all sides, in disregard of plaintiff's rights and the safety of his child; and in his individual capacity for the medical expenses incurred in treating the child. See 37 So.2d 464.

It appears that on October 1, 1946, the defendant Harry L. Zoder purchased from Mrs. L. E. Bankson certain property located at the corner of Line Avenue and College Street in the city of Shreveport, being lot 16, all of lot 15 except the south 40 feet of the east 35 feet, and the north 105 feet of lots 13 and 14 of Block K of the Thornhill Subdivision. At the time, the property (with the exception of lot 16, a vacant lot west of the garage and the concrete driveway) was under oral lease to and occupied by L. E. Plitt, and by the plaintiff James F. Salter, to whom Plitt had subleased the garage apartment. By this sublease plaintiff and his family were to have the use of the driveway and that part of the yard which adjoined the same. The garage apartment is located 7' from the south boundary of lots 15 and 16, facing a graveled alley running east to Line Avenue, and at the rear of the apartment is a concrete driveway which runs due north to College Street.

The defendant, having purchased the property with a view to converting it to an apartment building, immediately sought to obtain possession of the premises by giving Plitt the required six-months notice to vacate the property under the rules established by the Office of Price Administration, and, after obtaining permission from Plitt, began to accumulate and haul lumber to the premises which he caused to be stacked on a portion of the driveway to a height of about three feet, later covering it with galvanized iron. This extended for several inches beyond the lumber on all sides. On March 23, plaintiff's daughter, Frieda, aged six years, while playing with her twin brother on the driveway, fell and struck her face on the metal sheeting, lacerating her left cheek and requiring several stitches to close the wound, with the result that she has been left with a permanent scar.

The basis of plaintiff's action is that the defendant was negligent "by reason of his failure to maintain the premises owned by him and occupied under sublease * * * particularly said driveway, in a safe and unobstructed condition" and in stacking the lumber on the driveway and covering the same with the sheet metal having edges which extended on all sides, thereby creating a condition highly dangerous to children, particularly since he knew that plaintiff's small children, as well as neighboring children, used this driveway and the adjoining property daily for a playground.

The defense is that there was no landlord and tenant relationship between the plaintiff and defendant; and that the accident in question was not occasioned by the decay or the ruin of the building, nor the neglect to repair; nor was it the result of a vice in the original construction; and further, that the plaintiff and members of his family, under their sublease, had no right to use the driveway, since the only entrance they were entitled to use was the alley on which the apartment faced; and consequently, the subject child was a trespasser at the time of the accident.

▆ The Court of Appeal found that it was contemplated between plaintiff and Mr. Plitt that plaintiff was to have the use of the driveway for himself and members of his family, limited only by the right of Mr. Plitt's brother-in-law to use a portion thereof for parking purposes; and that the driveway, as well as the adjoining lot (not included in Plitt's lease), were generally used by the plaintiff's two children and the children of the neighbors as a playground until the defendant bought the property, erected fences, and planted the lot with grass, at which time the children were requested by the defendant to refrain from playing on the lot; and from these facts concluded (and we think correctly) that the subject child was not a trespasser upon the driveway; but (we think erroneously) concluded that the child was merely a licensee and therefore occupied a position somewhere between that

of a trespasser and that of an invitee, and that consequently the defendant, as the property owner, owed plaintiff and his family only the duty of refraining from injuring them wilfully, or through active negligence—which the Court did not find existed in this case and therefore absolved the defendant of liability. The conclusion that the child was merely a licensee was based on the appellate court's finding of fact that the relationship of landlord and tenant and/or subtenant did not exist as between the defendant and Plitt or as between the defendant and the plaintiff, inasmuch as the record was barren of proof that the defendant ever received rent from Plitt, or did anything, expressly or tacitly, to assume the status of landlord either to Plit or to plaintiff.

Although the payment or non-payment of rent by Plitt to the defendant was not at issue in this case, the Court of Appeal had an erroneous appreciation of the testimony, for the record does show that when the defendant acquired the property he was fully informed of Plitt's possession under the lease and was told to call on Plitt to get his rent. It is therefore clear that when the defendant acquired the premises and accepted rent from Plitt from month to month (as shown by Plitt's affidavit attached to application for rehearing), the status of landlord and tenant existed between the two. Revised Civil Code, arts. 2674, 2676 et seq.; Knapp v. Guerin, 144 La. 754, 81 So. 302, and since under the

express provisions of Article 2725 of the Revised Civil Code the lessee can always sublease unless he is expressly prohibited from doing so in his contract of lease, it necessarily follows that whatever duties and obligations defendant owed to Plitt's family as well as to those who had a right to be on the premises by Plitt's invitation or otherwise, existed equally as to the plaintiff, the members of his family, and those who had a right to be on the premises by his invitation or otherwise. See Wise v. Lavigne, 138 La. 218, 70 So. 103; Allain v. Frigola, 140 La. 982, 74 So. 404; Ciaccio v. Carbajal, 142 La. 125, 76 So. 583; Badie v. Columbia Brewing Co., 142 La. 853, 77 So. 768; Breen v. Walters, 150 La. 578, 91 So. 50; Davis v. Hochfelder, 153 La. 183, 95 So. 598. It is immaterial that the plaintiff did not pay rent to the defendant but instead paid directly to Plitt, for when the defendant acquired the property he knew that the plaintiff and his family were occupying the premises under a sublease from Plitt. Defendant not only recognized Plitt as a tenant by collecting the rent, but also recognized the right of Plitt and his subtenant, for before placing the lumber on the premises he sought Plitt's consent and inquired of the extent of plaintiff's rights as subtenant. Clearly, under these circumstances, subject child was not a licensee. She had the undisputed right to the use and possession of the premises sublet to her parent, the plaintiff, to the exclusion of the owner until the time arrived for them to vacate.

■ The law applicable to the facts of this case is found in the Revised Civil Code, Book III, Title V, Chapter 2, under the heading "Of Offenses and Quasi Offenses," where appears the provision that "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * *" Art. 2315, and, in the following article, the provision that "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." Art. 2316. That the defendant recognized the dangerous condition created by his act in stacking the lumber and covering the same with sheet metal which extended for several inches all around is clearly demonstrated by his testimony when asked the specific question with respect to this pile of lumber and its covering: "Didn't you realize that that was a very dangerous condition where young children were playing?" to which he answered: "If the young children were permitted to play there, yes.", and to the further question: "It would be if they were permitted to play?" again answered: "Yes, sir." In answer to the question of whether he asked the children who generally played on and about the lot adjoining the premises to stay off the driveway, he again by his answer strongly showed his recognition of the dangerous character of the situation he had created by stacking the lumber and covering it in this case: "I don't know. I might have asked them. I always tell children to get off the premises before they

get hurt." Although defendant contends that he did not know that the plaintiff's children played there, the testimony unmistakably shows that he did have such knowledge.

It is our opinion, therefore, that the defendant, by placing the lumber on the driveway and covering the same with the sheet metal extending several inches, not only disregarded the right of plaintiff and his family to the unobstructed use thereof, but, having placed the same in a spot where he knew the subject child as well as other children of tender years were accustomed to play, created a condition which he knew was highly dangerous to children and he should have foreseen and anticipated what happened; and for this negligent and imprudent act he is answerable for the damage suffered as a result thereof. On the quantum of damages, however, we have concluded to remand the case to the Court of Appeal for a final decision.

For the reasons assigned, the judgments of the lower court and of the Court of Appeal are annulled and set aside, and it is now adjudged and decreed that there be judgment in favor of the plaintiff and against the defendant for such sum as the Court of Appeal may find the facts of the case warrant; all costs to be paid by the defendant.

HAMITER, J., dissenting.

HAMITER, Justice (dissenting).

Conceding that the child in question enjoyed the status of an invitee on the prem-

ises, I do not find that the stack of lumber (with its galvanized iron covering) was a proximate cause of the accident and injury. The record discloses that during play the child tripped on some other and disconnected object, and, while falling, struck her face on the metal covering. Had an ordinary iron chair occupied the space at the time, rather than the lumber, the same injury might well have been sustained.

I respectfully dissent.