HARDY, Judge.
This is an action, ex delicto, instituted by plaintiffs, husband and wife, for the recovery of damages in the nature of personal injuries suffered by the latter, and the recovery of medical expenses by the husband. Plaintiffs have appealed from judgment rejecting their demands.
There is little, if any, dispute as to the established facts. Plaintiff wife, Mrs. Cas-syle McMurray, sustained a fall when she caught her heel in the badly worn carpeting on the floor of Terry’s Dress Shop, in which establishment she was employed by the owners thereof, Mr. and Mrs. L. C. Terry. The business was operated in part of a building located on DeSiard Street in Monroe under lease by the owners of the property to William L. and Alton Howard, hereinafter referred to as the Howards. Under the written contract of lease to the How-ards they had explicitly assumed the responsibility for the condition of the leased premises and released the owners, their lessors, from all liability for injury to any persons. The Howards, therefore, for the purposes of this action, must be regarded as solely responsible and, therefore, the fine distinctions between the liability of owners and lessees is eliminated from consideration. The lease to the Howards provided for a term of ten years beginning July 14, 1946, with an exclusive option of extending the said term for an additional period of five years, which option was timely exercised. Shortly after the execution of the lease the Howards performed some remodeling operations and the leased building was divided longitudinally into three separate store areas. The center store was subleased by the Howards to a Mr. Joe F. Smith, who covered the wooden flooring with wall-to-wall carpeting, affixed by being nailed into the flooring. After the expiration of the lease to Smith in or about July of 1956, the Howards secured a franchise for the operation of what was known as the Mode-O-Day Dress Shop, and, before beginning operation of this enterprise, they caused to be performed alterations or remodeling work, which consisted principally of the removal of the carpeting and the installation of asphalt floor tile throughout the store, with the exception of a small room at the rear thereof which was known and is referred to in the record of this case as the layaway room. This room was created by the erection of a partition across the width of the store, placed upon the carpeting which was permitted to remain in the layaway room. A door in the partition permitted access to this rear room and the carpeting was cut away in a circular area to permit the free opening and closing of the door. Sometime later the Howards discontinued operation of the dress shop and subsequently leased the same to their sister, Euphra Terry, and husband, Lartis C. Terry, in October of 1958. The brief written agreement of lease provided simply for the amount of the monthly rental and for the purchase of “the improvements on building and fixtures except air conditioner and cash register.” A later amendment of this lease in January of 1959 substantially reduced the sale price of the fixtures and improvements. At the time of the accident the store was being operated by the Ter-rys, and Mrs. McMurray, another sister of the Howards, was employed in the capacity of manager and saleswoman. At the time of the accident Mrs. McMurray, in the course of her duties, was engaged in some work in the layaway room, and in turning from the layaway rack toward the door for the purpose of determining if there were any customers in the front part of the store, according to her testimony:
“ * * * my heels of my shoe got all tangled up in the carpet and I did a complete twist and fell forward toward *900 the door with my feet — my heels of my shoe still hack behind me in the carpet.”
As the result of the fall, Mrs. McMurray sustained unusually severe and serious injuries to her back.
The record leaves no doubt as to the almost threadbare condition of the carpet and the inherent danger resulting therefrom. It is also abundantly established that the Howards were thoroughly cognizant of the condition of the carpet and the dangerous nature thereof. The uncontradicted testimony of Mrs. Loys Waldron, who was employed as a saleswoman by the Howards when they operated the Mode-O-Day Shop, and later by the Terrys, is convincing on the point that on several occasions she stumbled by reason of catching the heels of her shoes in the worn carpet, and on one occasion sustained some minor bruises as the result of falling against a table; that she reported these incidents to one of the Howards, specifically complained of the danger resulting from the ruined condition of the carpet, and that Mr. Howard promised to take care of the situation. It is also conclusively established by the testimony of the plaintiff that she sustained a fall, several days prior to the accident which caused her injury, that she reported the incident to Mr. Howard'and requested that he have the carpet removed. It appears that Howard suggested to Mrs. Mc-Murray that she and Mrs. Waldron attempt to remove the carpet themselves, but, in spite of their efforts, they were unable to perform this operation, and Mr. Howard promised to have the matter attended to. The testimony of Howard on this point is somewhat vague and unsatisfactory, although he did admit that he was acquainted with the dangerous condition and that he intended to have it remedied.
Plaintiffs’ action against the defendant as liability insurer for the Howards is predicated upon the responsibilities of the owner and lessor of the premises, in both of which capacities the Howards must stand by reason of their assumption of responsibility in their instrument of lease from the true owners. However, it is additionally contended on behalf of plaintiffs that the Howards are liable in this action, ex delic-to, under the provisions of Article 2315.
Our learned brother of the district court considered the primary issue to rest upon the conclusion as to whether the carpet comprised a part of the building and therefore should be considered as falling within the intent of LSA-C.C. Articles 670 and 2322. With meticulous thoroughness the opinion of the district judge also considered the liability of a lessor under LSA-C.C. Articles 2693 and 2695. The court concluded that the carpeting did not constitute a part of the building and that it did not fall within the codal articles defining immovables by nature or by destination. On this ground the final and logical conclusion was reached that the carpet which was the instrumentality causing plaintiff’s injury was not a part of the realty; that Articles 670 and 2322 pertaining to the ruin or vice in original construction of a building, therefore, had no application, and that the vice or defect attributable to the worn out carpet was under the control and constituted a responsibility of the sub-lessee-employer, that is, the Terrys.
With the utmost regard for the consideration given both the facts and the law as evidenced by the carefully prepared opinion of the district judge, we think the questions relating to the nature of responsibility and the effect of liability of owners or lessors are irrelevant with respect to the issue of liability, vel non.
In the case of Salter v. Zoder, 216 La. 769, 44 So.2d 862, the opinion of Mr. Chief Justice Fournet excluded from consideration the fine distinctions of the landlord-tenant relationship and applied the specific tort liability fixed by LSA-C.C. Articles 2315 and 2316, quoting the appropriate provisions of the respective articles as follows :
Article 2315.
“Every act -whatever of man that causes damage to another obliges him *901 by whose fault it happened to repair • * * *»
Article 2316.
"Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.” (Emphasis supplied.)
In the instant case, regardless of the relationships of the Howards as owners and lessors and the imposition of specific responsibility and consequent liability by reason thereof, we are firmly of the opinion, under the facts clearly established by the record before us, that they are liable under the codal provisions above noted. The facts are that when Smith, the original sub-lessee of the Howards, left the carpeting in the leased premises after he abandoned the same, it became the property of the Howards and they exercised the resulting ownership and control by removing a portion thereof in the course of their alterations.
It is urged on behalf of defendant that the ownership of the carpet passed to the Terrys as the subsequent lessee of the premises, but we do not regard this fact as being established. According to the testimony of both Mrs. Terry and Mr. Howard, the carpeting was neither mentioned nor considered in connection with the execution of the lease between them, but all other fixtures were specifically discussed, item by item. It is obvious that there was no discussion of the carpeting and no mention thereof in the transaction of lease between the Howards and Mrs. Terry because it was entirely worthless, having come to such a worn out condition that it was no longer of any value to anyone. We do not consider the question of ownership of the threadbare piece of carpet as pertinent. It was in place when the premises were leased to Mrs. Terry and it had constituted a dangerous hazard even during the period when the property was occupied by a business owned and operated by the Howards. The latter, therefore, were well acquainted with the inherent hazard to any and all persons who might lawfully be present in that part of the building known as the layaway room. According to the preponderance of the evidence, the Howards had accepted the responsibility and evidenced their intention of correcting the dangerous condition. In view of these circumstances, we cannot consider that the mere execution of lease limited or detracted from the continuing responsibility of the Howards to correct an existing danger, and this conclusion is further justified and emphasized by the direct knowledge of Mrs. McMurray’s first fall; a reiteration of the promise to correct the existing condition, and the failure and neglect to make such correction.
Again referring to the case of Salter v, Zoder, supra, we note the observation in the opinion that the defendant in that case had created a highly dangerous condition; that he should have foreseen and anticipated the occurrence of the accident, and that, because of his negligence and imprudent act, he was answerable for the damage suffered as the result thereof.
The rationale of the opinion in the Salter case was followed in the opinion of Mr. Justice McCaleb in Jackson v. Jones et al., 224 La. 403, 69 So.2d 729, and in the opinion of Judge Ellis in Edelman et al. v. Refrigeration Equipment Company, La.App., 72 So.2d 627 (First Circuit, 1954, writs denied).
While it is true that both the Salter and Jackson cases involved injuries to children of tender years, it is noticeable that the opinions in neither case referred to the attractive nuisance doctrine and the conclusions were predicated upon the liability of the respective defendants for their acts of negligence.
The asserted defense of assumption of risk or, alternatively, contributory negligence on the part of Mrs. McMurray, is untenable under the facts which we have attempted to set forth in detail. While it *902 is true that Mrs. McMurray was constantly aware of the dangerous condition of the carpet which eventually caused her injury, it is well established that such knowledge will not defeat an action for damages. A recent pronouncement on this point is found in Gilliam v. Lumbermen’s Mutual Casualty Company, 240 La. 697, 124 So.2d 913, 915.
In further argument on the issue of contributory negligence, counsel urges that Mrs. McMurray was wearing spike heels and that this constituted an added danger in view of the known condition of the carpet. Regardless of personal opinions as to the practicality, vel non, of female habiliments and accessories, this court does not feel it has jurisdiction to make pronouncements of a legal principle which would not only be contrary to the current dictates of women’s fashions in clothing, but would, in effect, deny the everyday common knowledge, resulting from observation, that women are able to wear what appear to mere males to be implements of danger and torture without either untoward accidents or physical discomfort.
There remains for consideration the question of the quantum of damages which should be awarded. The items of charges incurred for hospital and medical attention are established without dispute in the total sum of $1,643.93, to the recovery of which plaintiff husband is clearly entitled.
The substantial amounts claimed as damages by Mrs. McMurray are itemized as loss of wages and pain, suffering and shock,
It is too well established to require citation that claims for loss of wages by a wife fall under the community and that such loss can only be asserted by the husband as head and master thereof, unless he has specifically constituted his wife as the agent of the community for the particular purposes of asserting such a claim. In the instant case the husband did not pray for the recovery of this item of damage, nor did he indicate any delegation of authority to his wife. It follows that claims under this item must be disallowed.
There can be no doubt as to the serious degree of pain and suffering experienced by Mrs. McMurray. She was hospitalized shortly after the accident, and, after a period in traction, an exploratory laminectomy was performed, which discloses a traumatic radiculitis, an inflammation of the nerve root on the right side of tire first sacral vertebra. The appropriate operative procedure in consideration of this finding was performed by the attending surgeons and Mrs. McMurray was released from the hospital after a period of twenty-two days. Approximately a month later the patient suffered an acute phlebitis, resulting from a cut down of a vein in the leg in the course of the operation, and on this occasion the hospital confinement was for a period of five days. A long period of suffering and treatment is established in the record, not only by the testimony of plaintiff but by the uncontroverted testimony of her family physician, Dr. Fred A. Marx, and the orthopedic surgeon, Dr. Faheam Canon, who performed the operation above noted. Trial of this case was had some twenty months after the occurrence of the accident and plaintiff testified that she was still suffering severe pain and inability to perform even ordinary household duties without serious discomfort.
Without the necessity for further elaboration, we are of the opinion that Mrs. Mc-Murray sustained serious and severe injuries, from which she will continue to suffer for an indefinite period of time, and as the result of which she will be substantially disabled. We have concluded that an award of $10,000.00 should be made for pain and suffering.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
IT IS NOW ORDERED, ADJUDGED AND DECREED that there be judgment *903 in favor of plaintiff, Homer J. McMurray, in the sum of $1,643.93, and further judgment in favor of the plaintiff, Mrs. Cassyle McMurray, in the sum of $10,000.00, with interest on both amounts at the rate of 5% per annum from date of judicial demand until paid, together with all costs of this suit.