HALL, Judge.
This is a suit for damages filed by Henry J. Eschmann and his wife, Mrs. Louise M. Burdine Eschmann, to recover damages occasioned by Mrs. Eschmann’s fall down a flight of stairs. Mr. Eschmann died during the pendency of these proceedings and Mrs. Eschmann was substituted as sole party plaintiff.
At the time of the accident which occurred on October 19, 1964 Mrs. Eschmann was employed as a dictaphone-typist by the *407 R. Kirk Moyer Agency, Inc. which leased office space on the second floor of the Chopin Florist Building at the corner of St. Charles and Washington Avenues in the City of New Orleans.
Her original suit was against R. Kirk Moyer, individually, and his insurer; R. Kirk Moyer Agency, Inc., and its insurer; and Mrs. Elma C. Scheffler, Administra-trix of the Chopin Estate, alleged owner of the building.
Plaintiff’s suit as to R. Kirk Moyer Agency, Inc. and its insurer was dismissed on exceptions.
The heirs of Mr. and Mrs. Chopin, viz. Elma C. Scheffler, Adele C. Uddo, Mary C. Hayden and Frances C. Long and their insurer, Pacific Insurance Company of New York, were substituted as defendants in the place of the Administratrix of the Chopin Estate.
An intervention was filed by General Fire & Casualty Company to recover workmen’s compensation benefits paid by it to Mrs. Eschmann. The parties stipulated that General Fire & Casualty Company should be reimbursed up to the sum of $16,166.48 out of any recovery received by plaintiff.
The matter was tried by a jury which returned a 9 to 3 verdict in favor of plaintiff against R. Kirk Moyer and American Indemnity Company in solido in the full sum of $45,000.00 and dismissed the suit as to the other defendants, to wit: Adele C. Uddo, Mary C. Hayden, Frances C. Long and Elma C. Scheffler.
Judgment was rendered in accordance with the jury’s verdict and in addition thereto judgment was rendered in favor of the Intervenor, General Fire & Casualty Company and against plaintiff in the sum of $16,166.48 representing compensation benefits paid to plaintiff.
The defendants R. Kirk Moyer and American Indemnity Company appealed. Plaintiff did not appeal from any of the judgments rendered against her, nor did she answer defendants’ appeal.
The sole question presented for our determination is the liability vel non of R. Kirk Moyer. Quantum is not at issue.
At the time of the accident the entire second floor of the Chopin Florist Building was under lease to R. Kirk Moyer Agency, Inc. from the Chopin heirs. R. Kirk Moyer was president and general manager of the agency.
Access to the offices of the agency was gained by means of a carpeted stairway which led to the second floor from the Washington Avenue entrance of the building. This stairway ended at a small landing or vestibule measuring approximately 4' x 4'. The entrance door to the main office of the agency opened onto this vestibule directly opposite the head of the stairs. The door to another office of the agency which led to the lunch room opened onto the vestibule to the left of the stairs as one ascended. A strip of carpeting ran from the head of the stairs to the main office door. This strip did not cover the entire vestibule so that there was approximately a foot of bare floor between the side of the strip and the door leading to the lunch room.
Plaintiff testified as follows: that at approximately noon on October 14, 1964 she left her desk in the main office of the agency to join several other employees in the lunch room. In order to get to the lunch room it was necessary for her to go out of her office through the main office door opposite the head of the stairs, cross the small vestibule, and go through the door to her right which led to the lunch room. She had reached this other door and had her hand on it and was about to open it when she remembered leaving a confidential letter dictated by Mr. Moyer in her typewriter. She did not open the door but turned counter-clockwise to go back to her office to take the letter out of her typewriter. When she turned her left foot slipped or rolled over the top step of the stairs and *408 she tumbled head first down the stairs. She was wearing flat heeled shoes at the time.
There were no eye-witnesses to the accident.
Plaintiff contends that her fall was due to the poor condition of the carpet strip. Defendants contend that there is no evidence in the record that there was any defect in the carpet strip. They further contend that there is no showing of negligence on the part of Mr. Moyer; that the accident was occasioned solely through plaintiff’s own fault, inattention, haste, and negligence and alternatively that plaintiff was guilty of contributory negligence.
It is uncontradicted that the carpet strip in the vestibule as well as the carpet on the stairs was at least eleven or twelve years old, and the record contains ample testimony from the office employees that the carpet strip in the vestibule was worn down to the nap; that its edges were frayed; and that a small lump or ridge caused by the padding underneath ran across the strip about the center of the vestibule. Earl Gray, the agency’s porter, testified that it was part of his job to cut the fringes off the strip and to keep it tacked along the edges. There was testimony that this tacking had to be done every week or so. Mr. James E. Owens, an expert in the field of carpeting testified that from the photographs filed in evidence it appeared that the carpet’s condition represented a “tripping hazard”. He testified that a metal trim should have been applied along the edge of the carpet so that it would not turn up.
The record shows that Mr. Moyer was fully aware of the condition of the carpet. He testified that he had instructed the porter to trim the frayed edges as needed and admitted that the carpet often needed retacking which Gray did also.
There is a strong inference in the record that plaintiff’s fall might have been caused by a “dizzy spell.” She had a history of having had many serious ailments prior to the accident including at least one stroke which left her completely deaf in one ear. In 1962 she had had some difficulty in maintaining her equilibrium. She was hospitalized in the Spring of 1964 for numerous complaints. An electroencephalogram taken at that time stated in part “ * * * Background normal, spiked discharges very suggestive of thalamic epilepsy, high correlation with headache and dizziness.” Her treating physician, Dr. John A. Colcough, a neuro-surgeon, testified however that plaintiff had never in her life had a fainting spell or a convulsion.
Dr. Howard Karr testified for defendants as an expert neuro-surgeon. He had not treated plaintiff, but testified that it appeared from her medical records prior to the accident that she had arteriosclerosis and that stumbling episodes in patients with this condition were not uncommon and, in fact, it was one of the usual things from which such patients should be protected.
As against the speculation that plaintiff’s fall may have been caused by a dizzy spell we have plaintiff’s positive testimony as to what caused her to fall. We also have the fact that she had been working at the agency eight hours a day, five days a week for many months prior to the accident and there is no testimony that any of her co-workers ever saw her fall or have a dizzy spell.
The record contains ample evidence to support the jury’s finding, implicit in its verdict, that plaintiff’s fall was due to the defective condition of the carpet in the vestibule and that Mr. Moyer was thoroughly cognizant of its condition and was personally negligent in not correcting it. We find no manifest error in such finding.
Defendants’ plea of contributory negligence and assumption of risk was rejected by the jury. The record reveals that plaintiff was thoroughly familiar with the condition of the carpet in the vestibule and usually took another route to the lunch room in order to avoid it. However in this case plaintiff after having safely traversed the vestibule and being about to *409 open the door leading to the lunch room had her attention momentarily diverted by the sudden remembrance of the confidential letter which had to be removed from her typewriter and concealed from the view of other employees.
In 65A C.J.S. Negligence § 120 (2), p. 63 et seq., the rule is stated as follows:
“Momentary forgetfulness of, or inattention to, a known danger may, and usually does, amount to negligence, but forgetfulness of, or inattention to, such danger will not always constitute negligence. When a person has exercised the care and caution which an ordinarily prudent person would have exercised under the same or similar circumstances, he is not negligent merely because he temporarily forgot or was inattentive to a known danger. To forget or to be inattentive is not negligence unless it amounts to a failure to exercise ordinary care for one’s safety. Regard must be had to the exigencies of the situation, and the circumstances of the particular occasion.
“Circumstances may exist under which forgetfulness or inattention to a known danger may be consistent with the exercise of ordinary care, as where the situation requires one to give undivided attention to other matters, or is such as to produce hurry or confusion, or where conditions arise suddenly which are calculated to divert one’s attention momentarily from the danger. * * *
“In order to excuse forgetfulness of, or inattention to, a known danger, some fact, condition, or circumstance must exist which would divert the mind or attention of an ordinarily prudent person; mere lapse of memory is not sufficient, and, if, under the same or similar circumstances, an ordinarily prudent person would not have forgotten or have been inattentive to the danger, such conduct constitutes negligence.”
We are of the opinion that an ordinarily prudent person under the same circumstances as plaintiff would have forgotten the condition of the carpet and that her momentary forgetfulness was excusable and “was consistent with the exercise of ordinary care.” We find no manifest error in the jury’s rejection of the plea of contributory negligence. A case strikingly similar on the facts to the case at bar is McMurray v. Aetna Casualty & Surety Company, La.App., 141 So.2d 898.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by defendants-appellants.
Affirmed.