Statement of the Case.
NICHOLLS, J.
Plaintiff brings this suit against the United Fruit Company and James J. Legeai, claiming that they are indebted in solido to him in the sum of $10,000, with legal interest thereon. In his petition he alleges that on November 7, 1906, the United Fruit Company had possession of a certain steamship named Bertha, which said defendant used in its business of common carrier, and the other defendant, the said James J. Legeai, was engaged in the business of loading and unloading vessels in the port of New Orleans; and on the day and year aforesaid, the said steamship being in the port of New Orleans, the said United Fruit Company, desiring to have said steamship loaded with a cargo of ties, timber, and other goods, procured and directed the other defendant, the said James J. Legeai, to have said steamship loaded with said cargo, and the said James J. Le-geai, on the day and year aforesaid, at New Orleans hired and employed plaintiff to go with other men into the hold of said steamship and assist in the storing of said cargo in the hold of said steamship; and plaintiff and a number of other men under the direction of said James J. Legeai went on board of said steamship and descended into the hold of said steamship into that part of said steamship which is known as “hatch No. 2,” and entered upon the work of storing said cargo ; and then and there it became and was the duty of both defendants to furnish plaintiff and said other men employed in said hatch No. 2 with a reasonably safe place to work, and to keep said place reasonably safe while plaintiff and said other men were working in said hatch; and to use reasonable care to prevent anything from falling down into said hatch upon plaintiff and said other men while plaintiff and said other men were working in said hatch. But both defendants wholly neglected all their said duties in the premises, and did not, nor would not, furnish plaintiff and said other men with a reasonably safe place to work, and did not, nor would not, use any care to prevent things from falling down said hatch upon plaintiff and said other men; and, while plaintiff and said other men were working in said hatch, the said James J. Legeai negligently and carelessly allowed and permitted the other defendant, the said United Fruit Company, to wrongfully, negligently, carelessly, and insecurely place certain pieces of hatch covering on the top of said hatch No. 2, and about 2 o’clock on the day and year aforesaid, while plaintiff and said other men were working in said hatch assisting in the storing of cargo, a certain piece of timber which was being pulled by the tackle of said steamship on board of said 'steamship casually came in contact with the combing of said hatch and jarred one of said pieces of hatch covering which the said United Fruit Company had wrongfully, negligently, carelessly, and inse *571 curely placed over said hatch No. 2, and said piece of Latch, covering fell down said hatch and struck plaintiff’s left foot, bruising, contusing, and crushing it to a pulp; and plaintiff was taken to the Charity Hospital where he remained for a long time, to wit, one month, and, in consequence of said injuries, plaintiff suffered and still suffers great mental and physical pain, and plaintiff is informed, and believes, that his said foot is permanently injured, and that he is a cripple for the balance of his life.
Plaintiff further averred that he had no knowledge that said pieces of hatch had been so insecurely placed on said hatch that they might fall down upon plaintiff, and plaintiff avers that neither of the defendants gave plaintiff any warning or notice of the dangerous and insecure way in which said pieces of hatch covering had been placed on said hatch, although it was their duty so to do.
In view of the premises, plaintiff prayed that defendants be cited to appear and answer the matters and things aforesaid, and, after due proceedings shall be had according to law, plaintiff have judgment in his favor and against defendants in solido for the sum of $10,000 with 5 per cent, interest from date of judgment, and all costs of suit, and plaintiff prays for all general relief.
Both the defendants filed exceptions which were referred to the merits.
The United Fruit Company answered, pleading a general denial.
The defendant Legeai first pleaded the general issue. He subsequently by supplemental and amended answer averred that for several years he has been engaged in the business of loading and unloading ships ip this port, and that, in order to carry on his said business, he requires the services of a large number of men; that it is now, and has been for a number of years, an utter impossibility for him to secure such services outside of the membership of the Stevedores & Longshoremen’s Benevolent Society and the Longshoremen’s Protective Union Benevolent Association, two organizations which have for a longtime controlled the labor market available to this defendant and others engaged in the-same line of business in this port, and which jointly frame and enforce on their individual members certain rules or conditions under which they may or may not be permitted to work in the pay of this defendant and others engaged in the same line of business; that the-plaintiff herein was at the time that he came into the pay of this defendant, and on November 7th a member of one of said organizations and a party to all the rules or conditions created and maintained by said associations as aforesaid, but this defendant is not, and has never been, a member of either of said organizations, nor has he ever had a voice in their deliberations or in the formation of their said rules; that owing to the; rules of said associations and the conditions created and maintained in this port by said associations and the individual members thereof, including the defendant herein, it is now and has been for several years impossible for defendant to secure the services of members of said associations, except on the-following conditions, to wit: He must abstain from having in his employ any one who is not a member of said associations. When he has a ship to load or unload, he must, in order to secure the necessary services, employ from among the members of said associations one man to act as foreman. He must surrender to said foreman the right and power of determining how many men shall be employed. He must invest him with the sole power of employing and discharging them. He must allow him the exclusive right of determining and fixing their compensation, according to the schedule of hours and scale of wages fixed by the rules of said associations, and he must commit into the hands of said foreman absolute power of determining *573 the distribution of the men about the ship, assigning to each his particular duties, and of directing and superintending the performance of the entire work. That said foreman when so employed 'becomes the representative of said associations, and exercises all his powers in accordance with the rules laid down to him by said associations, and he cannot he discharged by defendant, nor will he receive or carry out any orders from defendant except in -conformity with the rules of said associations.
That on or about November 7th, when the plaintiff herein came into defendant’s pay, under the conditions above outlined and begun his day’s work in hatch No. 2 of the. steamship Bertha, the said hatch by this defendant’s orders and in accordance with the rules of said associations was clear of all covers. That defendant did not consent to any one putting wooden covers over a part of said hatch as alleged in plaintiff’s petition. That, if wooden covers were put on said hatch as alleged by plaintiff, the same were there in full view of the plaintiff herein and to his knowledge as well as to the knowledge of his fellow workmen, and plaintiff had the right under the rules of said associations, as it was his duty under the orders of defendant, to have removed said covers. In view of the premises, defendant prayed that this suit he dismissed in so far as defendant is concerned, and for costs and general relief.
The case was taken up for trial on December 14, 1909. On December 16, 190.9, the plaintiff through his counsel having suggested to the court that he had compromised his claim and demand against James J. Legeai, one of the defendants in the above-entitled cause, and has reserved all his rights against the said United Fruit Company, the other defendant in said cause, it was ordered that the claim and demand against James J. Le-geai be dismissed in so far only as the said James J. Legeai was concerned and with full reservation of all plaintiff’s rights against the said United Fruit Company, and especially the right to prosecute this suit against the said United Fruit -Company to final judgment.
On March 2, 1910, the court rendered judgment in favor of the plaintiff against the United Fruit Company for $1,000 with legal interest from date of judgment and costs.
That company has appealed.
Opinion.
The trial judge assigned the following reasons for his judgment:
The defendant United Fruit Company was the charterer of the ship Bertha at the time of plaintiff’s accident. Pro hoc vice. Said company was the owner and responsible for the results of any negligence on the part of the ship’s officers or men. Said company also at the time had the stevedores engaged as its. employés in loading the vessel with cross-ties, lumber, etc. Plaintiff was a stevedore employed in -said service, and was stationed in the hold of the vessel below the hatchway, engaged in receiving and properly storing the timber lowered into the hold. The hatchway has a cover of heavy timbers or thick planks which fit into the sides of the opening resting on ledges cut down into the side pieces of the hatch opening. When placed down flat on the ledges, they are safe and keep in place a secure covering to the hatchway. When plaintiff went down in the hold to labor, the hatchway was open, and the timbers to be stored below were taken from the wharf, swung over the hold and by machinery lowered into it.
The ship was also coaling, and the first mate, in order, as he testifies, to protect the men in the hold from^falling pieces of coal, ordered the partial covering of the hatchway, and superintended the placing of the pieces, forming the cover over it. He was in charge and in the employ of the United Fruit Com *575 pany, the charterers of the vessel and the defendant here.
Evidently the cover was not properly 'placed and adjusted. If it had been, no part of it wouiu have fallen into the hold. It makes no difference how it was adjusted; it was not properly done, because it fell, and the proof is that, if properly placed and fitted, it could not have fallen.
A witness who illustrated intelligently said that the fault of placing the pieces forming the cover lay in the fact that the piece which fell and crushed the plaintiff's foot was not placed squarely down in the ledges devised as its receptacles, but rested one end on the ledge of one side, with the other end resting on the top of the combing or side of the hatch opening, in a manner easily to be tilted and thrown into the hold beneath. However all’ this may be, the fact is that a heavy piece of the hatch cover fell, and crushed the plaintiff’s foot. Res ipsa loquitur. It was the duty of the defendant and its employes to furnish plaintiff a safe place for his work. I-Ie was in the ship’s hold and unable to guard himself from the results of what might be going on, on the vessel’s deck above. While so engaged, a heavy piece of wood, forming part of the hatch cover, fell on his foot, and inflicted the injuries for which he claims damages. The authorities cited by plaintiff’s counsel are conclusive in his favor on the established facts of the case.
In re The Joseph B. Thomas, 86 Fed. 658, 30 C. C. A. 333, 46 L. R. A. 58; Payne v. Georgetown Lumber Co., 117 La. 983, 42 South. 475; Fuller v. Tremont Lumber Co., 114 La. 266, 38 South. 164, 108 Am. St. Rep. 348.
The only question is the quantum of damages. I saw the plaintiff’s foot which he bared and exhibited. The great toe is stiff, the joint being in some way unable to perform its natural function. The great toe shows the scars of severe mashing and laceration. The red scar on the black skin surface (plaintiff is a negro) shows severe laceration of the bottom of the foot, under the instep, in the hollow of the foot (if this be predicated of an African) and on the inside of the foot, and on the top of the foot from the toes along, the instep, nearly to the ankle. The scars are deep and ugly and show the tearing away of the flesh. The great toe as stated is stiff and motionless.
No wonder at this, when the cause is considered; i. e., a heavy piece of timber falling end foremost from the top of the hatch to the bottom of the hold and alighting on the plaintiff’s foot. He was a month in the hospital and for eight months reporting to the hospital, and only recently pieces of fractured bone have worked their way through the flesh and were taken out. I heard the doctor testify for defendant as it seemed to me flippantly, and without remembrance of the facts, for he saw the plaintiff’s foot three years ago, and not since.
I saw and carefully looked at the plaintiff’s foot on the day he testified, and from what I saw I cannot rely on the physician’s opinion as to the extent of the injury or its pirobable permanency. The plaintiff’s foot was horribly mashed and crushed and lacerated, and I believe that the stiffening of his great toe joint is permanent. As a stevedore he worked at $4 per day — not every day, but as such laborers are employed. It is three years and more since the accident, and his capacity except for light work is gone. As a stevedore where a strong body and sound foot are required he can labor no more. By compromise with one of the defendants with reservation of his right of action against the present defendant he received $375.
Defendant’s estimate of a stevedore’s earnings average is $60 per month. During plaintiff’s confinement of eight months he lost at this rate $480. He was injured November 7, 1906. Estimating that he could work to some *577 extent from and after July, 1907, and could earn at light work $30 per month, his damages to date in loss of wages (since July, 1907) would be for two years and six months $900, total loss of wages $1,380 ($480-$900).
Deducting the amount received in compromise, and we have in round numbers $1,-300 loss of wages to date. This goes on the theory that he would have found steady work and have been able to perform it. No one can assume that this would have been so, and sound discretion would suggest a conservative deduction from these estimates. They are only suggestive and not infallible guides. IJIaintiff’s age was not proved, but I take him to be past middle life.
That he suffered greatly from such a wound goes without saying. I find it hard to estimate — i. e., to give plaintiff reparation —without oppressing the defendant whose loss is for the negligence of an employe and wholly vicarious. Plaintiff is a negro, an humble laborer. He was laboring where he was wholly dependent upon defendant’s care of him for immunity against any harm that could befall him from the ship’s deck. Defendant’s duty was to make his place of labor safe, and this duty defendant’s employés in charge of the ship did not fulfill. I fix his damages at $1,000 against the defendant the United Fruit Company, this over and above the amount he has received by compromise from the other defendant. Judgment for plaintiff against the United Fruit Company, defendant, for $1,000 with interest from date of judgment and costs.
The mate of the ship who caused the hatchway to be covered testified that he had done so under instructions from an officer of the United Fruit Company.
We are of the opinion that that company is responsible for his acts in the premises. Green v. Sansom, 41 Fla. 94, 25 South. 332.
The judgment appealed from is correct, and it is hereby affirmed.