## MASON v. HERRIN TRANSFER & WARE-HOUSE CO., Inc. (INDEMNITY INS. CO. OF NORTH AMERICA, Intervener).*
### No. 5244.

Court of Appeal of Louisiana. Second Circuit.
June 2, 1936.

E. W. & P. N. Browne, of Shreveport, for appellant.

Hoye Grafton, of Shreveport, for appellee Mason.

Irion & Switzer, of Shreveport, for appellee Indemnity Ins. Co. of North America.

HAMITER, Judge.

While in the performance of his duties on January 10, 1935, as an employee of the Shoreline Oil Company, plaintiff was struck and injured by a falling chain. On that date, and for some time prior thereto, that company was erecting and constructing a new boiler house on its property at or near Lewis, La., and the defendant, Herrin Transfer & Warehouse Company, Inc., was engaged in the installation therein, pursuant to contract, of two boilers and the necessary huge smokestacks.

At the time of the accident, the boiler house, measuring 60 feet long and 40 feet wide, with walls 22 feet high, and being constructed of steel framing and metal sheeting, was only partially completed, for the sheet metal had not been placed on the steel framework of the roof and walls on its eastern side. Defendant had substantially finished its installation work at that time, and was in the act of dismantling and removing the equipment and machinery.

In performing the contract, defendant used two gin poles. The smaller pole, being of wood, was lashed or tied with chains to the outside of the steel perpendicular beam on the east side of the building opposite the smokestacks, and was employed in erecting the larger pole of steel construction. This last-mentioned pole, having a length of approximately 36 or 40 feet, was installed in a vertical position on a wood block, of the

dimensions of 12 inches by 12 inches by 8 feet, which was secured on top of the 22-foot steel beam of the east wall at one end, and extended west across and was lashed to a boiler beam at the other end. This larger pole was used in lifting and placing the boilers and smokestacks. A heavy valve, weighing about 90 pounds, and employed as ballast or a counterweight, was fastened to the base of the steel pole with a chain. In order to erect the smokestacks, it was necessary for defendant to remove, and it did so remove, several of the rafters or steel purlins from the east side of the roof's framework. They were to be replaced by defendant on the completion of the work. At least one of these purlins was laid alongside of and parallel to the wooden block on which the large pole was erected. Numerous and different sized chains were used by defendant in its operations.

When injured, plaintiff, together with another workman, was carrying out the instructions of his foreman in stacking brick in a 4-foot alley between the boilers and the east wall on the inside of the building, and substantially beneath the tall steel gin pole. He was working in a bent-over or stooping position, with his eyes directed toward the brick, at the time of being struck on the back by the chain.

In this suit for damages, plaintiff charges various acts of negligence on the part of defendant and its employees. Defendant denies such negligence; alleges that if plaintiff was injured, the proximate cause was due to the fault of other parties over whom it had no control; and alternatively and affirmatively avers that plaintiff was contributorily negligent.

The Indemnity Insurance Company of North America, the workmen's compensation insurer of plaintiff's employer, is an intervener in the suit, and claims payment by preference and priority for the amount of compensation it has paid to plaintiff, and for the medical expenses incurred.

There was judgment for plaintiff, and also in favor of intervener, after trial of the case on its merits, and defendant has appealed. An answer to the appeal has been filed by plaintiff in which he asks for an increase in the amount of damages awarded.

In support of his demands, plaintiff's counsel relies in a large measure on the doctrine of res ipsa loquitur. It is argued that upon adducing proof that the chain which fell and struck plaintiff was a part of the equipment of the defendant and under its con-

trol, a prima facie case of negligence against defendant was established. Because of the view which we take of the case and hereinafter express, we deem it unnecessary to discuss that doctrine and to decide whether or not it is applicable.

Viewing the evidence in its entirety, it is apparent, and the trial judge found, that the chain causing the injury was the one which belonged to defendant and had been used by its employees in fastening the heavy valve to the base of the steel pole. On the morning of and shortly prior to the accident, defendant's employees removed the valve and chain from the pole, lowered the valve to the ground, and placed the chain across the 12 by 12 block and wedged it between that block and the above-mentioned purlin which lay alongside it. Thereafter, and before the accident, Oscar Wallace, one of defendant's workmen who was known as the "air man," was elevated by a rope or cable, handled by a fellow-employee named Bryant, to a point near the top of the smokestacks where he plumbed and tied them together with a guy wire. Wallace then descended from his "sky job," and alighted on top of the boiler beam about 2 feet from the block, chain, and purlin. Thereupon, the purlin was moved, causing the chain to become loosened and to drop a distance of about 22 feet onto plaintiff. According to the testimony of this "air man," the purlin, which weighed about 20 or 25 pounds, was lifted by one of the iron workers of the Shoreline Oil Company who was standing behind him. Although Oscar Wallace, a witness for defendant, was the only person to testify regarding the lifting of the purlin and the consequent falling of the chain, and this particular part of his testimony is somewhat weak because his back was to the chain at the time of its falling, nevertheless, for the purpose of this discussion, we shall accept defendant's view on this fact and consider that it was so lifted by a person who was not in the employ of defendant company.

Defendant's employees obviously knew that plaintiff was working immediately beneath them, because only a distance of 22 feet separated them. Also, there was sufficient light to render him visible, as the sides of the building had not then been constructed and nothing intervened to obstruct their view. They were in a better position to observe plaintiff than he was to see them; for they no doubt were compelled to frequently look down, while plaintiff's work in stacking brick caused his vision to be fo-

cused on the ground. Numerous other workmen were in and around the building. No safety zones or barriers of any nature were established by defendant or its employees beneath their position of operations so as to prevent persons from being injured by the possible falling of tools or portions of the equipment. Plaintiff was given no warning whatever of any impending danger.

■ There are three questions of law, affecting defendant's alleged liability, presented herein, viz.: (1) Under the circumstances, were defendant's employees negligent in wedging the chain between the purlin and the wooden block? (2) If they were negligent, was that negligence a proximate or merely a remote cause of the accident? (3) Was plaintiff negligent in working beneath the steel pole so as to bar his recovery herein?

We are of the opinion that the first question should be answered in the affirmative. The purlin, against which the chain was wedged or jammed, was movable and was temporarily laid alongside of the block by defendant's employees with the intention of their later replacing it. The possibility of its being lifted or moved by one of the numerous workmen engaged on the roof structure, and the consequent falling of the chain, was or should have been appreciated by them. In view of this, and of their knowledge that many persons, including plaintiff, were working beneath them, that no safety zones existed, and that no warning was given to plaintiff, it can only be concluded that defendant's employees failed to exercise the ordinary care or reasonable diligence required of them. The fact that the chain might have been further needed in the operations, and that to have securely tied it or thrown it to the ground would have caused a considerable loss of time, is of no moment. The law does not sanction the endangering of human life in the interest of material or pecuniary progress. We are cognizant of the principle of law that negligence must be proved, and that it cannot be presumed merely because an accident occurred and injuries resulted. But the evidence in the record amply sustains our conclusion that defendant's employees, when considering the circumstances and the character of the work were negligent.

■ Defendant's counsel earnestly and seriously urges that the moving of the purlin by another workman was the proximate cause, while the wedging of the chain against the movable piece of steel was only the remote cause. An interesting opinion involving this point of law is found in the case of The Joseph B. Thomas (C.C.A.) 86 F. 658, 663, 46 L.R.A. 58. The claimant therein was injured when struck by a falling keg which had been knocked into the hatchway where he was working. This keg had been insecurely placed by servants of defendant on some hatch covers at a location in close proximity to the hatchway. A person, not in the employ of defendant, stepped on the covers and the precipitation of the keg resulted. The court stated:

"But counsel argue that the negligence of the servant of appellants in placing the keg in the position stated was not the proximate cause of the injury; that it was the negligence of the stevedore in piling the covers, and the negligence of the stevedore in stepping on the covers, that was the proximate cause of the accident that occurred. Of course, if the man or boy had not run against or stepped upon the covers, there might not have been any accident at that particular time. But it was not the covers, nor the person that stepped on the covers, that was the real cause of the injury. You can twist and turn the facts in any direction which the ingenuity and ability of counsel may suggest, but the mind is inevitably forced to the conclusion that it was the negligent placing of the keg in a dangerous position that constituted the efficient and controlling cause of the injury. It was the natural result which in the light of the attending circumstances, the appellants ought reasonably to have foreseen might occur when the keg was put upon the covers; and one which, by the exercise of ordinary care and prudence, they should have guarded against. They were required to use such precautions to avoid danger as a person of ordinary prudence would use for his own protection. It makes no difference whether it was a man or a dog that ran against or stepped upon the covers, or whether it was a jar occasioned by the falling of a heavy box, or a gale of wind. It was the placing of the keg in such a position that it was liable to be upset from any of these causes that constitutes the negligence, and creates the liability, notwithstanding the fact that there were other causes which may have immediately or remotely contributed to the accident. Negligence may be the proximate cause of an injury of which it is not the sole or immediate cause. If appellants' negligence concurred with some other event (other than the fault of appellee) to pro-

duce the injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the appellants would be responsible, though their negligent act was not the nearest cause in the order of time. The rule is given in 1 Shear. & R. Neg.(4th Ed ) § 31, as follows:

"'The mere fact that another person concurs or co-operates in producing the injury, or contributes thereto, in any degree, whether large or small, is of no importance. * * * It is immaterial how many others have been in fault, if the defendant's act was an efficient cause of the injury.'

"In 16 Am. & Eng.Enc.Law, 440, it is said:

"'It is no defense, in an action for a negligent injury, that the negligence of the third person, or an inevitable accident, or an inanimate thing, contributed to cause the injury of the plaintiff, if the negligence of the defendant was an efficient cause of the injury. In such cases the fact that some other cause operates with the negligence of the defendant in producing the injury does not relieve the defendant from liability. His original wrong concurring with some other cause, and both operating proximately at the same time in the production of the injury, he is liable to respond in damages, whether the other cause was a guilty or an innocent one.'"

The decision in The Joseph B. Thomas Case, supra, was cited approvingly in Taylor v. United Fruit Co., 126 La. 568, 575, 52 So. 770.

The doctrine announced in the case of Lee v. Powell Bros. & Sanders Co., 126 La. 51, 56, 52 So. 214, 216, is pertinent. Our Supreme Court therein stated:

"The chain of causation by which responsibility is to be fastened upon the defendant company need not be followed beyond the negligence of leaving it in a condition in which it might move at any time from a thousand accidental causes, or perhaps of its own weight, so that its movement might be expected at any moment. So much so, indeed, that we dare say not one of the workmen knowing it to be in that condition would have been willing to venture to stand upon the track, but would have considered that it was as much as his life was worth to do so. One who creates a danger which thus, as it were, hangs by a thread, and may at any time fall, which is bound sooner or later to fall, is responsible for the consequences of its fall. The efficient or juridical cause of the injury in such a case is the creation of this danger.

"For severing the legal connection between the negligence by which such an imminent danger was created and the injury that has resulted from it the intervening voluntary act of some person responsible for his acts would have to be shown. For instance, in the present case, that some one of the workmen, noticing that the lever was unlocked, or insecurely locked, had maliciously pushed it. Nothing of that kind is shown, or even suggested. The mere unintentional, or accidental, act of a third person would not suffice for breaking the chain of causation:

"'Nor when a negligence subsequent to that of the defendant is the agent by which the defendant's negligence proves injurious can the subsequent negligence be a bar to the plaintiff's recovery if such subsequent negligence was likely, in the usual and natural order of things, to follow from the defendant's negligence.' Wharton, Negligence (2d Ed.) par. 145."

Considering this case in connection with the doctrines above announced, it appears to us that the lifting of the purlin was not such an independent or intervening act so as to make it the proximate cause of the injury and to render the placing of the chain the remote one. In the light of the attendant circumstances, particularly the fact that other persons were engaged at work in close proximity to the location of the chain, defendant's employees ought reasonably to have foreseen or anticipated that the purlin might be lifted or moved by some one with resulting injury. For liability to attach, it was not necessary that they must have foreseen or anticipated the consequences of their act. 45 Corpus Juris 918. Obviously, the accident would not have happened if the chain had not been resting against the movable bar where it was lodged by defendant's workman. That negligent act was a proximate, an efficient, and the primary cause of the occurrence. It is true that the injury might not have been sustained if the purlin had not been lifted; but this is immaterial in so far as defendant's liability is concerned. To fix liability on a person, it is not necessary that his negligent act be the sole cause of the accident. It is sufficient that his negligence concurs with one or more efficient causes. The causes involved herein were concurrent. The

 

placing of the chain was one, while the lifting of the purlin was the other.

 We think that the able trial judge correctly and properly concluded that plaintiff was not contributorily negligent. In his well-considered written opinion, he stated:

"The defendant has plead contributory negligence, and takes the position that the plaintiff voluntarily and unnecessarily exposed himself to known danger. It is our belief from the evidence that the plaintiff could not be expected to refrain from stacking the brick in the neighborhood of the spot from which he was actually stacking them at the time of the injury, and that there was no more known danger in that particular spot than in a radius of several feet around it. There was no danger zone marked off, and there is no showing that establishes to the mind of the court that he was individually warned of the danger; and it likewise seems clear that in the position he had to assume to do the work he was doing, namely, the stooping position, he could not be expected to see above him and watch for falling objects. While there was danger in being under such work as was being done by the Herrin Company, the Company none the less owed the duty to the plaintiff of preventing objects from falling on him, and we feel that this duty has been violated, and that the plaintiff was not contributorily negligent."

The fact that plaintiff was in the discharge of his duties when injured is to be given great weight in considering the matter of his alleged contributory negligence. Although his personal safety was in peril while he was stacking brick substantially beneath defendant's workmen, as was proved by the happening of the accident, he had a right and duty to be at that location. And it does not appear from the record that he did not exercise ordinary care and prudence. He incurred a risk which the ordinarily prudent person, performing work of that nature and under similar circumstances, would have incurred. Plaintiff's actions, therefore, at the time of the accident will not bar his recovery herein.

 The record sustains the trial judge's finding that plaintiff's injuries consisted of a fracture of the ninth rib, together with the adjoining facet, at its origin at the vertebral column; that plaintiff suffered pain for approximately 10 weeks; and that the injuries should completely heal in a period of 6 months. The judgment awarded damages in the sum of $2,167.50, of which $57.50 was for medical expense and the balance was for injuries, pain, and suffering and loss of earnings. We think the total sum excessive to the extent of $500, and that the judgment should be reduced accordingly.

A provision of the judgment of the district court is to the effect that the intervener herein, the Indemnity Insurance Company of North America, shall be paid by preference and priority, out of the judgment herein rendered in favor of plaintiff and against the defendant, the sum of $395.90. This is predicated on an agreement, found in the record, of all parties litigant.

For the reasons assigned, the amount awarded to plaintiff is reduced to $1,667.50, and, as thus amended, and in all other respects, the judgment is affirmed.