ELLIS, Judge.
This is a suit in which the plaintiffs, Mrs. Rose Goldberg Edelman and Miss Belle Goldberg, were awarded damages against *628 the defendant, Refrigeration Equipment Co., Inc., in the amount of $2944.70 to each plaintiff with interest and costs, as a result of their asphyxiation due to the negligence of defendant found by the lower Court to have occurred on November 4, 1950 after an inspection of the combined air conditioning and heating system installed in plaintiff’s home by defendant, a checking of the controls of said system, and reporting same as being “O.K.” when in fact it was not.
Defendant appealed from the judgment of the lower Court after its application for rehearing had been denied.
It is plaintiff’s contention in its brief and according to the allegations of its petition that on December 8, 1950 at about 8:30 a. m. plaintiffs were found in an unconscious condition in their residence as a result of asphyxiation due to the defective installation and faulty workmanship of t'he defendant, its officers, agents and employees, in furnishing and installing the air conditioning and heating system in their home and the continued failure of the defendant to correct such faulty conditions after inspection of the equipment. The particular defects shown by plaintiff’s petition are as follows:
(a) In installing the equipment in a room in which there was insufficient air for combustion for the gas burners causing incomplete combustion and carbon monoxide fumes in the equipment room which could be drawn into the heating system and distributed through out the house.
(b) In leaving air leaks in the return duct system, especially along the duct and unit seams.
(c) In failing to install an air temperature limit, thermostat at the discharge duct connection of the heating unit.
(d) In failing to place the heating unit in the discharge duct of the system.
Plaintiffs further allege that as a result of the above defects, on the night of December 7, 1950 and the morning of December 8, 1950, carbon monoxide fumes were produced by the said heating system and carried throughout the house and into the bedroom where the plaintiffs were asphyxiated. In the alternative plaintiffs make the following charge in their petition:
“Alternatively, in the event it should be shown that there was nothing improper about the workmanship of defendant in the furnishing and installation of said equipment and that defend- ■ ant was free from fault, in that connection, then plaintiffs allege that whatever conditions caused the asphyxiation of petitioners as above set out were or should have been apparent to an expert in that line, such as defendant, when defendant inspected the equipment in the fall of 1950, and that in those events defendant was negligent in failing to discover and remedy that condition or those conditions at that time, and defendant’s negligence in those respects proximately caused the injuries and damages here sued for.”
The defendant filed an exception of no right and no cause of action and a plea of prescription of one year.
The record reveals that according to a written contract the defendant was employed to install a combined heating and cooling system in the plaintiff’s home. This contract was entered into by Mrs. Rose Goldberg Edelman’s husband on Nov. 7, 1946, whereby the defendant was to install the system for $3148.50. Mr. Edelman died before the completion of the home and installation of the system by the defendant, and the control of the work was undertaken with the consent of Mrs. Edelman by her son Leonard Edelman, who, as found by the trial judge,' was for all intents and purposes acting as his mother’s agent. The system was duly installed and had been in operation for approximately four years before the occurrence complained of on December 7th and 8th, 1950. As to the exact date of the completion of the installation of the system, we must depend upon the defendant’s invoice in the sum of $3147.50 which was offered in evidence and is dated March 11, 1947, and of this sum $2361 was paid the early part of April, 1947, and $500 additional was paid on November 12, 1947, which *629 left a balance of $286.50 which the defendant relieved the plaintiff of paying as a result of damage of an equal amount done by the overflow of an induced draft cooling tower which was placed in the attic and which wet the ceiling on the back part of the house.
It was agreed or stipulated on the trial of the case that the records of the Gulf States Utilities Company would show that the gas was first turned on in the Edelman home on May 2, 1947, and of course the defendant could not have tested the system until after that date. It is definitely shown by the plans and specifications for the house that Edelman was to build the equipment room in which the system was to be installed. This room was to have one louvered door. In the words of the District Judge:
"This kind of door as is shown by the evidence was absolutely necessary to permit the entry of combustion cdr into the equipment room and to prevent or minimize the accumulation of carbon monoxide gas in said room.” (Emphasis added.)
The District Court further stated as a' fact:
“Notwithstanding the fact that Leonard Edelman is a highly educated young man, holding a Master’s degree in Engineering, he ordered that the louvered door called for by the plans and specifications be discarded and he caused to be installed in lieu of the blind or louvered door a solid door at the entrance of the equipment room. This door, when closed, prevented the entry of combustion air into the equipment room, causing the creation of carbon monoxide gas therein which was blown through a broken duct into the sleeping quarters of the plaintiffs, resulting in their asphyxiation.”
The defendant’s exception of no right or cause of action is really based upon its plea of prescription and therefore should be overruled. The petition does state a right and cause of action. The plea of prescription will not be considered until after a full discussion of the merits of the case. The specific acts of negligence as charged by the plaintiff, supra, will be discussed in the order shown.
The evidence shows that the equipment room was completed with a solid rather than a louvered door upon instructions from Leonard Edelman. Checks offered in evidence show payment to one Porter, the carpenter, who hung the door, showing completion of this carpenter work on the equipment room on the 2nd of March, 1947, and as the final test and approval of the system could not have been made by the defendant until after May 2, 1947 when the gas was turned on, it is therefore self-evident that on the latter date and when the equipment was put into operation for final test, the solid door was hanging in the entrance to the equipment room. There is no dispute about the fact that the president of the defendant company, who was an engineer, was fully aware of the fact that a solid door on this equipment room'which contained the heating and cooling system was dangerous, however, he testified that he did not discover the solid door, rather than the louvered door called for by the specifications, until he went there after the accident. He unequivocally testified that had he known of the solid door before the accident he would have told the Edelmans that it was improper and the louvered door should be installed in lieu thereof. ‘ ,
From the evidence, Mr. Faures, President of the defendant company, is chargeable with knowledge that this solid door had been installed on this equipment room prior to the final testing and approval of the system by his company. He was present on the premises a good many times and particularly after the date the solid door had been hung on the equipment room. The Trial Judge correctly held:
“It is a certainty that if Mr. Faures knew or if any of his employees knew, before this system was put into operation that this solid door had been substituted for a louvered door, it was negligence, on their part, regardless of Leonard Edelman’s mistake, to have put the system into operation. Indeed, *630 this is admitted.” (Emphasis added.)
As to the charge of leaving air leaks in' this return duct system, it is clear from the testimony of all the experts that no system is air tight and that some outside air is bound to be pulled into the ducts, which carry the heated or cooled air, whichever it might be, into the various rooms of the house. This charge of neglect was not proven. However, it is also clear that in view of the fact that these ducts are never completely air tight it- is absolutely necessary that a louvered door or some other opening,be supplied in the equipment room so that the gas burner will not create carbon monoxide.
As to the alleged failure to install an air temperature limit thermostat, even if it be admitted that one was not installed it would have nothing to do with the accident.
As to the alleged failure to place the heating unit in the discharge duct, of the system rather than the intake or suction duct, there were many experts who testified on this point. Their evidence is in almost irreconcilable conflict, and the district court correctly held that the plaintiff had not proven that the placing of the heating unit in the discharge duct- rather than the intake contributed to the accident.
From the testimony, the plaintiffs have failed to prove that there was anything wrong with the installation of the actual system itself. The only negligence proven was the failure on the part of the defendant or its agents and employees in putting this equipment in operation after its installation, knowing that the solid door would result in causing the system to create carbon monoxide as the result of insufficient fresh air for combustion purposes. It is true that this system operated for nearly four years, but it was proven that the heated air which came through the ducts into the hall discolored some of the walls and that the equipment room was particularly discolored. There were a number of complaints, and as a result, an equal number of' service calls during the four years. It is also true that most of the complaints were with regard to the cooling system; but these employees of the defendant should have noticed the discoloration in the equipment room caused by poor combustion as a .result of the solid door.
, Sometime prior to the night of December 7-8, 1950 the evidence reveals that either something had been dropped upon the ducts connecting the heating-unit to the blower unit breaking the joint loose on the bottom of the duct next to .the inner wall of the equipment room where, as one of the experts for the plaintiff testified, “You would have to stand on your head to find it,” or it was due to work on the system by an expert employed by the plaintiff who testified that in -1950 he was employed by Mrs. Edelman to-go to her home and do some work on this system and that he cleaned the ducts and coils and at that tim'e discovered the duct “pulled a loose from the unit itself.” He testified that a colored employee of Plaintiffs who had gone to show him the way to the home told him that he had, in effect, dropped a cover on the duct which had to be removed in order to clean the filters, and according to 'this witness that is When the duct was broken. He also stated that he told them about the duct as well as the danger of the solid door and that it should be removed, or at least a grill put in it. The Edelman's vehemently deny this. This witness also testified that he put a cork under one end of the weathermaker, which was the-larger unit in the equipment room.. In doing this he had to raise, the unit, and it is more than likely that the duct was pulled loose at this time.
Be that as it may, the hole in the duct cannot be charged to any neglect on the part of the defendant, or a failure to discover it. They stand convicted, if at all, of continued neglect from the date of the testing and approval of the equipment 'and the delivery thereof in the early part of 1947 to the plaintiff by virtue of a failure to warn and a refusal to place the equipment in operation as a result of the solid door which it knew would cause carbon monoxide to be created in the equipment room. Mr. Faures, President of defendant company, very frankly admitted, as well as all of the experts who testified in the *631 case, that this accident was caused “from a split place in a duct where a duct had pulled a loose in the system”, and that the carbon monoxide fumes were pulled in it and that the same were possible cause of the accident. He readily admitted that the carbon monoxide was caused by the lack of air as a result of the solid door.
On November 4, 1950 when the defendant was called to ready the system for cool weather,, it is shown that its employee found the pilot lighted, checked the controls, and reported it “O.K.” This employee readily admitted that the solid door was still in the equipment room. The District Court found that on this date the defendant was guilty of negligence in approving the operation of the system when it knew that the solid door would prevent necessary air from entering the-room and as a result the carbon monoxide would be created.
The learned judge of the Lower Court was correct in holding that it was not necessary to decide whether ten years prescription applied under the written contract if the defendant was guilty of negligence on Nov. 4, 1950, as the plea of one year’s prescription would not be good.
It is the contention of the defendant that its negligence, if any, in placing the system in operation and failing to warn the Edel-man’s, was a remote and not a proximate cause of the accident. It contends that the proximate cause of the accident was the broken duct which in no wise was proven to be chargeable to it.
The defendant in his brief advances the following facts and arguments:
“The next proposition that appears necessary of discussion in this: Suppose, for the sake of argument, that there was a showing that the defendant was originally negligent, in installing the equipment in a room in which there was already a solid door, or in later seeing the solid door and not warning the Plaintiffs' herein or someone representing said Plaintiffs. If this premise were taken, it would be equivalent to stating that the Defendant’s negligence had created a condition which alone did not cause the in- . juries to Plaintiffs herein, but which condition continued to exist until some other cause occurred which, together with the original condition, caused the injuries.
• “In other words, the question is: If two acts of negligence concur to create in injury and a defendant was believed to have been responsible for the first act of negligence but was not shown to be responsible for the second or intervening negligent act, could he be held liable to third perso'ns ?
“We are not relinquishing in any way the point that the original condition here of danger from carbon monoxide was due not to the Defendant (who did not construct the equipment room nor were they obligated to fúrnish the same), but on the other hand, the equipment room was the obligation of the owner; and the solid door was placed, in there by the owner’s agent, Leonard Edelman, who changed the specifications. Mr. Faures, of the defendant company, had seen the specifications and knew that a ventilated door was specified. We still contend that he was justified in believing that ,a. ventilated door would be furnished. But, for the sake of argument, say he later discovered a solid door there. The original condition was created, as stated, by Leonard Edelman. However, going further, suppose that the Court •thinks that some onus should be placed on Refrigeration Equipment Company for not seeing the solid door on some of their various calls, and thus being constrained to charge the Defendant company with negligence for allowing this condition to exist.
“It is clear here that the efficient operating cause or, as it is called, the proximate cause, of the injuries to the Plaintiffs was the breaking of the duct. This break allowed the gases to reach the living quarters where the Plaintiffs *632 were affected. This break was never traced to Defendant nor could it be traced to Defendant, but rather appears to have been caused by either the Negro porters hired by the Edel-mans or by Wilson who was hired by the Edelmans.”
Counsel for defendant relies upon the fqllowing cases: Kendall v. New Orleans Public Service, La.App., 45 So.2d 541; Petrich v. New Orleans City Park Improvement Ass’n., La.App., 188 So. 199; Williams v. Pelican Creamery, Inc., La. App., 30 So.2d 574.
We do/not believe the cases relied upon by the defendant are controlling. In the Petrich . case, supra [188 So. 200], the Court stated:
“⅜ * * Therefore, since the accident resulted from the totally unexpected and unforeseen negligence of the intervening party — the other golfer — it cannot be said that the initial negligence of Roux in placing Mrs. Petrich in that position had, in reality, causal connection with the accident.
“In 45 Corpus Juris, page 931-32 (Negligence), appears the following: ‘A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was -made possible, if there intervened between such-prior or remote cause and the injury a distinct, successive, unrelated and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion.’
“In Lee v. Powell Bros, and Sanders Company, 126 La. 51, 52 So. 214, 216, the Supreme Court said; ‘For severing the legal connection between the negligence by which such an imminent danger was created and the injury that has resulted from it the intervening voluntary act of some person responsible for his acts would have to be shown.’
“In Mire v. East Louisiana R. Co., 42 La.Ann. 385, 7 So. 473, we find the principle, stated as follows: ‘In case the proof shows that the accident would not, in all likelihood, have happened, but for the interposition of some independent responsible third party between the servant’s negligence and the injury sustained, and it affects the result, and is the immediate cause of the injury, the plaintiff cannot recover against the original wrong-doer.’ (Syllabus) See, also, Moore v. Jefferson Distilling and Denaturing Company, 169 La. 1156, 126 So. 691.”
In the Pelican Creamery case, supra [30 So.2d 577], this Court, after a full discussion of proximate and remote causes,, in applying the law to the facts held:
“Under these facts we find that such acts of negligence bn the part of the driver of the Federal truck and trailer were an independent force having no connection with the act of negligence of the driver of the Creamery truck. If it had not been for the gross negligence of the driver of the Fede.ral! truck, theré would have been no accident. * * *
******
“We therefore conclude that the negligence of defendants’ truck driver in'the violation of the statute quoted supra did not constitute a proximate cause of the' accident, which,' in our opinion, as in that of the district judge, resulted solely and entirely from the gross negligence of the Federal truck driver.” ■
In Kendall v. New Orleans Public Service, supra [45 So.2d 543], The Orleans Court of Appeal said:
“ ‘And one cannot recover for injuries sustained, even admitting negligence of a carrier, unless such negligence was the proximate cause of such injury.
******
“ ‘To state the rule briefly: one is not responsible for the results of his *633 acts which are brought about by a chain of circumstances unforeseen, unexpected, and which no reasonable man could naturally have looked for or anticipated. Mauney v. Gulf Refining Co, 193 Miss. 421, 8 So.2d 249, 9 So.2d 780.
* * * * * *
“ ‘Considering that the short-circuit which caused the fire was not an unusual occurrence, though the resulting fire was, and that the entire occurrence lasted only a few minutes, I cannot hold that the injury to plaintiff was the direct and proximate result of the fire. To the contrary, it was due to the abnormal reaction of a third person under circumstances not justifying it. I can no more hold defendant responsible under the circumstances here than I could it. Instead of a human being, it was a dumb animal who ran amok and injured plaintiff.’ ”
In the present case it is conceded that the cause of this accident was the creation of carbon monoxide as a result of the solid door and the hole in the duct. In other words, had either condition or cause not existed there would have been no accident. Therefore, the breaking of the duct was not the sole and proximate cause. On the contrary the two causes concurred to bring about the accident. In the cases relied upon the original act of negligence was held to be the remote cause and therefore the cases are not applicable to the factual situation which exists in the case at bar.
The learned judge of the lower court in arriving at the conclusion that the defendant’s negligence of November 4, 1950 and the negligence of the unknown person who broke the duct concurred so that each was a contributing and proximate cause of this accident. He relied upon a statement in Sherman and Redfield on Negligence, Vol. 1, page 107 as follows:
“The mere fact that some other cause operated with the negligence of the defendant to produce the injury complained of does not relieve the defendant from liability. If the damage is caused by the concurring force of the defendant’s negligence and some other cause, for which he is not responsible, whether such other cause be of human origin or act of God, defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage.”
On page 106 of the same volume we find this:
“Where concurrence in cases is charged, the test is, simply, could the accident have happened without their co-operation? ‘Guilty or responsible concurrence in causing an injury involves the idea of two or more active agencies co-operating to produce it; either of which must be an efficient cause, without the operation of which the accident would not have happened. * * * In every such case, the question is what was the proximate cause of the occurrence and, if concurrence in negligence is claimed, were the acts or omissions of the parties so closely related and cooperative as to make either a probable and an efficient cause? Could it be said of each cause that without its operation the accident would not have happened?’ ”
In Jackson v. Jones, 224. La. 403, 69 So.2d 729, 733, decided by this Court and in which writs were granted to the Supreme Court and the latter reversed the holding of this Court, it held:
“Lastly, we direct our attention to the point that Jones is not responsible because the proximate cause of the accident was the push given plaintiff’s child by another playmate which produced the injury. The determination of the proximate or efficient cause of an accident, as distinguished from the remote cause, is sometimes difficult of practical application and often turns ‘upon the very nicest discriminations’. Louisiana Mut[ual] Ins. Co. v. Tweed, 7 Wall. 44, 19 L.Ed. 65. However, .in matters like this, the criterion governing liability is whether the person ere- *634 ating the danger could' or should reasonably have foreseen that the accident might occur. If such were the case, then he is liable notwithstanding the intervening cause. See 38 Am.Jur. Verbum ‘Negligence’ § 70, pages 726, 727.
“Applying this rule to the case at bar, we think it clear that Jones, in exposing the young children of the' school to the inherent danger of the unattended lumber containing protruding nails, should have been fully' cognizant not only that a child might suffer injury by climbing upon the lumber but also that injury might ensue while at play thereon as the consequence of a fall brought about by a push or shove (an intervening act) of one of his com-' panions. Since we think it reasonable to conclude that a prudent man similarly situated would have anticipated an accident such as this, the last result, that is the push given by the little girl’s playmate, is to be regarded as the proximate consequence of the initial wrongful act. 38 Am.Jur. § 70, page 727, and authorities cited; Salter v. Zoder, supra [216 La. 769, 44 So.2d 862].”
If one who leaves a pile of lumber with nails on it on a school ground should anticipate “the push given by the little girl’s playmate” there is no doubt that in the present case the defendant should have anticipated, as a result of a solid door on the equipment room, the creation of carbon monoxide and the possibility of its being drawn into the duct system and discharged into the house.
The law applied and relied upon by the Lower Court has many times been affirmed in our jurisprudence. In the case of Lynch v. Fisher, La.App., 34 So.2d 513, 516, the Court states:
■ “Plaintiff herein has properly alleged the concurrent negligence of the several defendants and there is ample authority in this State for the proposition that a third person may recover from either or all parties alleged tó be guilty of concurrent negligence. Shield v. F. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L.R.A.,N.S., 1080.
* * * * * *
“In determining the question as to the efficiency of the intervening act, that is, in this case, the shooting of plaintiff by one of the defendants, we must consider the well established principle that an intervening cause is not necessarily ,a superceding cause. The intervening cause, in order to supersede original negligence, must have alone produced injury.”
See also Chavers v. A. R. Blossman, La. App., 45 So.2d 398.
Applying the doctrine announced in the last above quoted case, it cannot be said that the broken duct superceded the original negligence, for it alone did not produce the injury.
In Russo v. Aucoin, 7 So.2d 744, 747, this Court through Mr. Joseph A. Loret, Judge Ad Hoc, stated:
“The proximate cause of an accident ■ may bé the -negligence of one person or ■ it may be the negligence of several people. If it is the negligence of several people, that negligence may be their joint negligence, that is, negligence in which they participate jointly, acting ■ together, or it may be separate negligence by each of them which, combining together, produces the unfortunate result: the accident.
“In the case of joint negligence of several, they are acting together in concert, and they either do something together which they should not have done or they fail to do something which, under the circumstances, they were together obligated to do.
“In the case of separate negligence of several persons being the proximate cause of an accident, they are not acting in concert. Each of them is independently guilty of negligence consisting of doing something he should not have done or failing to do something he should have done. However, *635 their separate negligence has been by unfortunate circumstances combined to produce the accident. A good example of an accident caused by the separate negligence of several persons is a collision between two vehicles caused by negligence of both drivers. Each driver in committing his negligence, acts independently of the other, but the combination of their independent negligence results in the collision.
“When the negligence of one person alone is the sole proximate cause of an accident, he is liable to anyone who suffers injury to his person or damage to his property as a result of the accident. When the negligence of several persons, whether their joint negligence or their separate negligence combines to form the proximate cause of an accident, the negligence of each one of them is one of the proximate causes of the accident, and he is liable to anyone who suffers injury to his person or damage to his property as a result thereof. Arnold v. Griffith, La.App., 2 Cir., 192 So. 761, 763. In other words, one whose negligence is either the sole proximate cause or one of the proximate causes of an accident is liable therefor.”
In Abrego v. Tri-State Transit Co., La. App., 22 So.2d 681, 682, the Court held:
“We think the ruling was correct. It is well settled that where the negligence of two or more persons combines to cause an injury to a third person, all of the persons whose negligence concurred in and contributed to the injury are liable in solido, and the plaintiff in such a case is not concerned with the question of the degrees of negligence as between the co-defendants, or their respective rights inter sese. On this point, what we said in the case of Falgout v. Younger, [La.App.], 192 So. 706, 711, is appropriate to this case; ‘If the negligence of the drivers of the two trucks in this case combined to bring about the accident, a third person, without fault, as plaintiff was in this case, has a right to collect his full damage from any or all the defendants. We are forced to the conclusion that the combined negligence of the drivers of both trucks brought about the accident — that of Hebert in creating an unlawful obstruction in the road thereby blocking traffic without giving the proper signals, and that of Bourg in driving into this hazard at too fast a speed and in failing to have his car under control. Where a defendant is responsible for one of two or more proximate causes of an injury, he cannot escape liability because a third person is responsible for a concurrent proximate cause.’
“A careful review of the record in the present case convinces us that the injury which the plaintiff suffered was caused by the combined negligence of the driver of the bus and that of the driver of the freight van, and that the negligence of each was a proximate and contributing cause of the injury. It is unnecessary for us to undertake the difficult task of parcelling out to each driver the degree or extent to which his negligence contributed to the accident as the doctrine of comparative negligence does not prevail in this State.”
See also Allen v. Louisiana Creamery, Inc., La.App., 184 So. 395.
In Arnold v. Griffith, La.App., 192 So. 761, 763, our brethren of the Second Circuit were faced with the same question and in discussing it stated:
“In deciding the case of Mason v. Herrin Transfer & Warehouse Co. La.App., 168 So. 331, 334, this court said:
“ ‘To fix liability on a person, it is not necessary that his negligent act be the sole cause of the accident. It is sufficient that his negligence concurs with one or more efficient causes. The causes involved herein were concurrent. The placing of the chain was *636 one, while the lifting’ of the purlin was the other.’
“It is not. necessary that the acts be related one to the other. It is sufficient that each contributed in fact to the consummation of harm. There can be no legal or proximate cause unless there is causal connection in fact. Consequences are in fact causal if they would not have happened but for the defendant’s conduct. If the acts of the defendant were necessary antecedents of the consequences in question, they are a cause in fact of those consequences. This has become known as the ‘but for’ or sine qua non rule Harper on Torts, Sec. 109, page 253.
“From the allegations of plaintiffs’ petition there are two proximate and concurring causes of this accident: The negligence of Mrs. Griffith’s chauffeur in veering suddenly across the highway in front of the oncoming cars, and the negligence of the driver of the Andress car in maintaining such a speed that he was unable to stop his automobile before striking the automobile of the plaintiffs. Had either of these two parties been free from negligence, this accident would never have occurred.
“It is strenuously argued on the part of the defendants that this exception should be sustained for the reason the negligence of the Andress driver was unforeseeable, therefore, this defendant cannot be held liable as the action of the Andress car driver was not a foreseeable consequence of the defendant’s negligent act. This, if true, would cause an anomalous situation. Two parties, both of whom were negligent, could combine forces causing consequences, neither of which standing alone would have been sufficient to cause, with both able to plead unfore-seeability of negligence on the part of the other.-■ Thus, the injured party, entirely without fault, would be unable to recover against either. Fortunately this is not the law. Dr. Fowler v. Harper, in treating this question, malees the following statement:
“ ‘Consequences caused by the defendant’s conduct and an intervening, independent, for foreseeable negligent act of a third person are proximate, and the intervening negligence does not insulate the defendant’s original fault. While some cases have been decided contrary to this rule on the theory that one need not anticipate the failure of others to conduct themselves in a lawful manner, the modern view is as stated. Experience assures us that men do in fact frequently act carelessly, and when such action is foreseeable as an intervening agency, it will not relieve the defendant from responsibility for his antecedent misconduct.’ Harper on Torts, § 123, page 274.
“This is certainly an instance wherein the driver of the defendant car should have foreseen and could have foreseen that another traveler might be traveling at an excessive rate of speed. Neither party’s negligence was sufficient to have caused the consequence standing alone. Both materially contributed to the accident and damage, and either or both are liable in damages under the allegations of the petition.”
In Green v. Chotin, La.App., 159 So. 760, 761, it was stated:
“It is contended, however, by defendant, that the proximate cause of the injury was not the hole in the ramp of. defendant, but the hole in the sidewalk which caused plaintiff to stumble. Defendant did not plead contributory negligence and it is only necessary to determine whether or not he was himself negligent. The general rule is that negligence, to render a person liable, need not be the sole cause of the injury. It is sufficient that the negligence concurring with one or more efficient causes other than plaintiff’s fault is the proximate cause of the injury. The fact that the hole in the sidewalk figured to some extent does *637 not relieve defendant of his negligence in permitting the ramp to remain in a dangerous condition. In the case of Birsch v. Citizens’ Elec [tric] Co., 36 Mont. 574, 93 P. 940, 943, the court said: ‘We think it may be said to be the general rule, sustained by the great weight of authority, that -‘where the primary cause of an injury is a pure accident, occasioned without fault of the injured party, if the negligent act of the defendant is a co-operating or culminating cause of the injury, or if the accident would not have resulted in the injury excepting for the negligent act, the negligence is the proximate cause of the injury, for which damages may be recovered.’ ”
Again in the case of Blanks v. Saenger Theaters, 19 La.App. 305, 138 So. 883, 888 it was said:
“But conceding for the sake of the argument that defendant was negligent in the erection and maintenance of the fire escape, counsel argue that this negligence was at best a remote cause and not the proximate cause; that the boy coming upon the ladder was a responsible person, and consequently the proximate cause of plaintiff’s injury. Undoubtedly if this boy could be found plaintiff would have a cause of action against those responsible for his acts. But does this fact mean that defendant’s negligence in the erection and maintenance of its fire escape was not also a proximate cause of plaintiff’s injury?
“ ‘Definitions and tests are inadequate to afford a definite and invariable rule whereby a lien can be drawn between those causes which the law regards as sufficiently proximate and those which are too remote to be the foundation of an action,’ 45 C.J. 900.
“There have been an infinite number of definitions of proximate cause formulated by the courts and law-writers, and in the final analysis practically every case developes a state of facts that justifies a special definition of the term. In this case, the negligence of the defendant in the erection and maintenance of the fire escape and the stepping upon it by the hoy and causing it to suddenly descend to the sidewalk and strike plaintiff were concurrent causes, and each may be said to' be a proximate cause. It is not necessary to render defendant liable to show that its negligence was the sole cause. It is sufficient to show that its negligence concurred with that of the boy. Proximate cause has been defined as an act without which the injury would not have been caused. If defendant’s fire escape had been a stationary ladder leading to the sidewalk below, the exit of the boy would not have caused plaintiff’s injury. If, on the other hand, the horizontal suspended drop ladder had not been over the sidewalk but had been over defendant’s own property no injury would or could have been inflicted upon plaintiff as she was walking upon the sidewalk where she had a right to be in safety. * * * ”
In Vol. 65 C.J.S. under Negligence, § 110, Concurrent Causes; we find the following :
“It is generally considered that there may be more than one proximate cause of an accident or injury, and that each of the concurrent efficient causes contributing directly to the accident or injury is a proximate cause thereof. There is, however, some authority rejecting the theory that there may be two or more proximate causes of an injury and holding that there can be but one proximate cause. In any event, two or more separate and distinct acts of negligence operating concurrently may constitute the proximate cause of an injury.
“As a general rule, it may- be said that negligence, in order to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, .other than plaintiff’s fault, is the proximate cause of *638 the injury. Accordingly, where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured. It is no defense to one of the concurrent tort-feasors that the injury would not have resulted from his negligence alone, without the negligence or wrongful acts of the other concurrent tort-feasor.
“On the other hand, it must appear that the person sought to be charged was responsible for one of the causes which resulted in the injury, and no recovery can be had from a defendant in a case where plaintiff’s injuries could have resulted from any of several independent causes, only one of which can be attributed to such defendant. * * *»
Applying the law and jurisprudence cited, we find that each case must depend upon its own particular facts, and in the present case neither one of the two causes of this accident alone would have produced it. It took both and therefore each was a concurring, contributing and proximate cause, and the defendant is therefore responsible for his negligence.
As to the quantum the District Judge has correctly arrived at a just award and we therefore quote:
“The plaintiff, Mrs. Edelman, seeks damages in the total sum of $8344.70, itemized as follows:
For hospital, nursing and medical bills .$ 444.70
Estimated cost of repairs to heating system.'_ 400.00
Physical pain and suffering and mental anguish. 7500.00
8344.70
“Miss Goldberg’s claim for damages is identical with Mrs. Edelman with the exception of the item of $400.00, estimated cost of repairs of the heating system.
“As to the claim of Mrs. Edelman for $400.00 estimated cost of repairs and correction of the heating system, this item could be recoverable only upon the theory that there was a violation of a contract.
“As her demand is considered as one' for damages ex-delicto, this item will be disallowed.
“As to the claims of both defendants for hospital, nursing and medical bills, proof having been made of the correctness thereof, the sum claimed by each, namely, $444.70, will be allowed.
“As to the demand of each defendant for $7500.00 for physical pain and suffering and mental anguish, I am of the opinion that the same is excessive. Our law does not favor punitive damages.
“Here defendant’s liability flows from kcts of omission rather than commission.
“There can be no doubt that the two plaintiffs came dangerously near losing their lives. When found in their home, Mrs. Edelman was in a semiconscious condition while Miss Goldberg was wholly unconscious. Artificial respiration was necessary before the two ladies could be taken to a hospital. Dr. Selser testified that the condition of both was very serious.'
“After regaining consciousness. both had difficulty in breathing.
“Their symptoms according to Dr. Selser were aching of the body, hfead-aches, loss of appetite, and a bronchial cough.
*639 “Ten days elapsed before either could stand or walk.
“There is not the slightest doubt that both suffered great physical pain and mental anguish.
“It seems to me that an allowance of damages in the sum of $2500.00 each, in addition to their hospital, nurseing and medical bills will do substantial justice between the parties.'
“As to the fees of the expert witnesses, I am of the opinion that a fee of $25.00 to Dr. Selser who was in Court only a short while should be adequate,
“The engineer experts called by plaintiffs were Lewis Miremont, George P., Walter, Charles Woodruff and H. N. Ogden. I think a fair fee for Miremont, Woodruff and Ogden will be $25.00 each. Walter, who was in Court for several days and who testified at great length, I think should be awarded a fee of $100.00.
“For the reasons assigned, judgment is rendered and will be signed in favor of Mrs. Rose Edeiman and against the defendant in the total sum of $2944.70, itemized as follows: $444.70 for hospital, nursing and medical bills, $2500.00 for physical pain and suffering and mental anguish, with legal interest thereon from judicial demand, until paid, and in favor of Miss Belle Goldberg in the same amounts, that is $444.-70 for hospital, nursing and medical bills and $2500 for physical pain and suffering and mental anguish, with legal interest thereon from judicial demand until paid, and for all costs, including the fees of the medical doctor and other expert witnesses as herein-above fixed. Judgment will be signed accordingly.”
Judgment affirmed.